CHENG FAN KWOK *v.* IMMIGRATION AND
NATURALIZATION SERVICE.

No. 638.   Argued May 2, 1968.—Decided June 10, 1968.

*Jules E. Coven* argued the cause for petitioner.   With
him on the brief was *Abraham Lebenkoff.*

*Charles Gordon* argued the cause for respondent.   With
him on the briefs were *Solicitor General Griswold, Assist-
ant Attorney General Vinson,* and *Francis X. Beytagh, Jr.*

*William H. Dempsey, Jr.,* by invitation of the Court,
390 U. S. 918, argued the cause and filed a brief, as
*amicus curiae,* urging affirmance.

MR. JUSTICE HARLAN delivered the opinion of the
Court.

The narrow question presented by this case is whether
jurisdiction to review the denial of a stay of deportation,
if the pertinent order has not been entered in the course
of a proceeding conducted under § 242 (b) of the Immi-
gration and Nationality Act, 66 Stat. 209, 8 U. S. C.
§ 1252 (b), is, under § 106 (a) of the Act, 75 Stat. 651,
8 U. S. C. § 1105a (a), vested exclusively in the courts of

appeals.[1]   The question arises from the following cir-
cumstances.

Petitioner, a native and citizen of China, evidently
entered the United States in 1965 as a seaman.[2]   The
terms of his entry permitted him to remain in this coun-
try for the period during which his vessel was in port,
provided that this did not exceed 29 days.   See 8 U. S. C.
§ 1282 (a).[3]   He deserted his vessel, and remained unlaw-
fully in the United States.   After petitioner's eventual
apprehension, deportation proceedings were conducted by
a special inquiry officer under the authority of § 242 (b).
Petitioner conceded his deportability, but sought and
obtained permission to depart the United States volun-
tarily.[4]   Despite his protestations of good faith, peti-
tioner did not voluntarily depart, and was ultimately
ordered to surrender for deportation.   He then requested
a stay of deportation from a district director of immi-
gration, pending the submission and disposition of an
application for adjustment of status under 8 U. S. C.
§ 1153 (a)(7) (1964 ed., Supp. II).[5]   The district director

_____

[1] We emphasize that no questions are presented as to petitioner's
deportability or as to the propriety in his situation of any discre-
tionary relief.   We intimate no views on any such questions.

[2] The facts concerning petitioner's entry into, and subsequent stay
in, the United States appear to have been conceded in the proceeding
before the special inquiry officer.

[3] Section 1282 (a) provides in relevant part that "(a) No alien
crewman shall be permitted to land temporarily in the United States
except . . . for a period of time, in any event, not to exceed—
(1) the period of time (not exceeding twenty-nine days) during
which the vessel . . . remains in port . . . ."

[4] We note, as we did in *Foti* v. *Immigration Service,* 375 U. S. 217,
that the "granting of voluntary departure relief does not result in
the alien's not being subject to an outstanding final order of depor-
tation." *Id.,* at 219, n. 1.

[5] Section 1153 (a)(7) (1964 ed., Supp. II) provides in part that
"[c]onditional entries shall next be made available . . . to aliens who

concluded that petitioner is ineligible for such an adjustment of status, and denied a stay of deportation.

Petitioner thereupon commenced these proceedings in the Court of Appeals for the Third Circuit, petitioning for review of the denial of a stay. The Court of Appeals held that the provisions of § 106 (a), under which it would otherwise have exclusive jurisdiction to review the district director's order, are inapplicable to orders denying ancillary relief unless those orders either are entered in the course of a proceeding conducted under § 242 (b), or are denials of motions to reopen such proceedings. The court dismissed the petition for want of jurisdiction. 381 F. 2d 542. We granted certiorari because the courts of appeals have disagreed as to the proper construction of the pertinent statutory provisions.[6]   390 U. S. 918. For reasons that follow, we affirm.

## I.

It is useful first to summarize the relevant provisions of the Immigration and Nationality Act and of the regulations promulgated under the Act's authority. Sec-

---

satisfy an Immigration and Naturalization Service officer . . . that (i) because of persecution or fear of persecution . . . they have fled . . . from any Communist or Communist-dominated country . . . ." Conditional entries are available only to refugees, and, like the parole system, grant "temporary harborage in this country for humane considerations or for reasons rooted in public interest." C. Gordon & H. Rosenfield, Immigration Law and Procedure § 2.54 (1967). See also *id.*, at § 2.27h.

[6] Compare the following: *Skiftos* v. *Immigration & Naturalization Service*, 332 F. 2d 203 (C. A. 7th Cir.); *Talavera* v. *Pederson*, 334 F. 2d 52 (C. A. 6th Cir.); *Samala* v. *Immigration & Naturalization Service*, 336 F. 2d 7 (C. A. 5th Cir.); *Mendez* v. *Major*, 340 F. 2d 128 (C. A. 8th Cir.); *Melone* v. *Immigration & Naturalization Service*, 355 F. 2d 533 (C. A. 7th Cir.); *Mui* v. *Esperdy*, 371 F. 2d 772 (C. A. 2d Cir.); *Yamada* v. *Immigration & Naturalization Service*, 384 F. 2d 214 (C. A. 9th Cir.); *De Lucia* v. *Attorney General*, — U. S. App. D. C. —, — F. 2d —.

tion 242 (b) provides a detailed administrative procedure for determining whether an alien may be deported. It permits the entry of an order of deportation only upon the basis of a record made in a proceeding before a special inquiry officer, at which the alien is assured rights to counsel, to a reasonable opportunity to examine the evidence against him, to cross-examine witnesses, and to present evidence in his own behalf. By regulation, various forms of discretionary relief may also be sought from the special inquiry officer in the course of the deportation proceeding; an alien may, for example, request that his deportation be temporarily withheld, on the ground that he might, in the country to which he is to be deported, "be subject to persecution . . . ." See 8 U. S. C. § 1253 (h) (1964 ed., Supp. II); 8 CFR § 242.8 (a).

Other forms of discretionary relief may be requested after termination of the deportation proceeding. The regulations thus provide that an alien "under a final administrative order of deportation" may apply to the district director "having jurisdiction over the place where the alien is at the time of filing" for a stay of deportation. 8 CFR § 243.4. The stay may be granted by the district director "in his discretion." *Ibid.* If the stay is denied, the denial "is not appealable" to the Board of Immigration Appeals. *Ibid.*

Section 106 (a)[7] provides that the procedures for judicial review prescribed by the Hobbs Act, 64 Stat. 1129, 68 Stat. 961, "shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens . . . pursuant to administrative proceedings under section 242 (b) of this Act . . . ." These procedures

---

[7] Section 106 (a), 8 U. S. C. § 1105a (a), was added to the Immigration and Nationality Act by § 5 (a) of Public Law 87–301, approved September 26, 1961, 75 Stat. 651.

vest in the courts of appeals exclusive jurisdiction to review final orders issued by specified federal agencies. In situations to which the provisions of § 106 (a) are inapplicable, the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court.

The positions of the various parties may be summarized as follows. We are urged by both petitioner and the Immigration Service to hold that the provisions of § 106 (a) are applicable to the circumstances presented by this case, and that judicial review thus is available only in the courts of appeals. The Immigration Service contends that § 106 (a) should be understood to embrace all determinations "directly affecting the execution of the basic deportation order," whether those determinations have been reached prior to, during, or subsequent to the deportation proceeding.[8] In contrast, *amicus*[9] urges, as the Court of Appeals held, that § 106 (a) encompasses only those orders made in the course of a proceeding conducted under § 242 (b) or issued upon motions to reopen such proceedings.

## II.

This is the third case in which we have had occasion to examine the effect of § 106 (a). In the first, *Foti* v. *Immigration Service,* 375 U. S. 217, the petitioner, in the course of a proceeding conducted under § 242 (b), conceded his deportability but requested a suspension of deportation under § 244 (a)(5). The special inquiry officer denied such a suspension, and petitioner's appeal from the

---

[8] Brief for Respondent 28.

[9] Since the Immigration Service had aligned itself with petitioner on this question, the Court invited William H. Dempsey, Jr., Esquire, a member of the Bar of this Court, to appear and present oral argument as *amicus curiae* in support of the judgment below. 390 U. S. 918.

denial was dismissed by the Board of Immigration Appeals. Petitioner commenced an action in the district court, but the action was dismissed on the ground that, under § 106 (a), his exclusive remedy lay in the courts of appeals. He then petitioned for review to the Court of Appeals for the Second Circuit, but it dismissed for want of jurisdiction. A divided court held *en banc* that the procedures of § 106 (a) were inapplicable to denials of discretionary relief under § 244 (a)(5). 308 F. 2d 779. On certiorari, we reversed, holding that "all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals . . . are . . . included within the ambit of the exclusive jurisdiction of the Court of Appeals under § 106 (a)." 375 U. S., at 229.

In the second case, *Giova* v. *Rosenberg*, 379 U. S. 18, petitioner moved before the Board of Immigration Appeals to reopen proceedings, previously conducted under § 242 (b), that had terminated in an order for his deportation. The Board denied relief. The Court of Appeals for the Ninth Circuit concluded that the Board's denial was not embraced by § 106 (a), and dismissed the petition for want of jurisdiction. 308 F. 2d 347. On certiorari, this Court held, in a brief *per curiam* opinion, that such orders were within the exclusive jurisdiction of the courts of appeals.

Although *Foti* strongly suggests the result that we reach today, neither it nor *Giova* can properly be regarded as controlling in this situation. Unlike the order in *Foti*, the order in this case was not entered in the course of a proceeding conducted by a special inquiry officer under § 242 (b); unlike the order in *Giova*, the order here did not deny a motion to reopen such a proceeding. We regard the issue of statutory construction involved here as markedly closer than the questions pre-

sented in those cases; at the least, it is plainly an isssue upon which differing views may readily be entertained. In these circumstances, it is imperative, if we are accurately to implement Congress' purposes, to "seiz[e] every thing from which aid can be derived." *Fisher* v. *Blight,* 2 Cranch 358, 386.

It is important, first, to emphasize the character of the statute with which we are concerned. Section 106 (a) is intended exclusively to prescribe and regulate a portion of the jurisdiction of the federal courts. As a jurisdictional statute, it must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes. *Utah Junk Co.* v. *Porter,* 328 U. S. 39, 44. Further, as a statute addressed entirely to "specialists," it must, as Mr. Justice Frankfurter observed, "be read by judges with the minds of . . . specialists." [10]

We cannot, upon close reading, easily reconcile the position urged by the Immigration Service with the terms of § 106 (a). A denial by a district director of a stay of deportation is not literally a "final order of deportation," nor is it, as was the order in *Foti*, entered in the course of administrative proceedings conducted under § 242 (b). [11] Thus, the order in this case was issued more

---

[10] Frankfurter, Some Reflections on the Reading of Statutes, 2 Record of N. Y. C. B. A. 213, 225.

[11] We find the emphasis placed in dissent upon the word "pursuant" in § 106 (a) unpersuasive. First, § 106 (a) was evidently limited to those final orders of deportation made "pursuant to administrative proceedings under section 242 (b)" simply because Congress preferred to exclude from it those deportation orders entered without a § 242 (b) proceeding. This would, for example, place orders issued under 8 U. S. C. § 1282 (b), by which the Immigration Service may revoke a seaman's conditional permit to land and deport him, outside the judicial review procedures of § 106 (a). See generally C. Gordon & H. Rosenfield, Immigration Law and Procedure § 5.11

than three months after the entry of the final order of deportation,[12] in proceedings entirely distinct from those conducted under § 242 (b), by an officer other than the special inquiry officer who, as required by § 242 (b), presided over the deportation proceeding. The order here did not involve the denial of a motion to reopen proceedings conducted under § 242 (b), or to reconsider any final order of deportation. Concededly, the application for a stay assumed the prior existence of an order of deportation, but petitioner did not "attack the deportation order itself but instead [sought] relief not inconsistent with it." *Mui* v. *Esperdy,* 371 F. 2d 772, 777. If, as the Immigration Service urges, § 106 (a) embraces all determinations "directly affecting the execution of" a final deportation order, Congress has selected language remarkably inapposite for its purpose. As Judge Friendly observed in a similar case, if "Congress had

---

(1967). Perhaps this suggests, as *amicus* urges, that § 106 (a) was intended to be limited to situations in which quasi-judicial proceedings, such as those under § 242 (b), have been conducted. It certainly indicates that the reference in § 106 (a) to § 242 (b) proceedings was intended to limit, and not to broaden, the classes of orders to which § 106 (a) may be applied. Second, it must be reiterated that § 106 (a) does not, as the dissenting opinion suggests, encompass "all orders" entered pursuant to § 242 (b) proceedings; it is limited to "final orders of deportation." The textual difficulty, with which the dissenting opinion does not deal, is that the order in question here neither is a final order of deportation, nor is it, as was the order in *Foti,* "made during the same proceedings" in which a final order of deportation has been issued. 375 U. S., at 224. This cannot be overcome merely by examination of the meaning of the word "pursuant."

[12] The special inquiry officer's decision, which established deportability and granted voluntary departure, was issued on March 3, 1966. Petitioner filed his application for a stay on June 20, 1966. The application was evidently denied on the same day.

wanted to go that far, presumably it would have known how to say so." *Ibid.*

The legislative history of § 106 (a) does not strengthen the position of the Immigration Service. The "basic purpose" of the procedural portions of the 1961 legislation was, as we stated in *Foti,* evidently "to expedite the deportation of undesirable aliens by preventing successive dilatory appeals to various federal courts . . . ." 375 U. S., at 226. Congress prescribed for this purpose several procedural innovations, among them the device of direct petitions for review to the courts of appeals. Although, as the Immigration Service has emphasized, the broad purposes of the legislation might have been expected to encompass orders denying discretionary relief entered outside § 242 (b) proceedings, there is evidence that Congress deliberately restricted the application of § 106 (a) to orders made in the course of proceedings conducted under § 242 (b).

Thus, during a colloquy on the floor of the House of Representatives, to which we referred in *Foti,*[13] Representative Moore, co-sponsor of the bill then under discussion, suggested that any difficulties resulting from the separate consideration of deportability and of discretionary relief could be overcome by "a change in the present administrative practice of considering the issues . . . piecemeal. There is no reason why the Immigration Service could not change its regulations to permit contemporaneous court consideration of deportability and administrative application for relief." 105 Cong. Rec. 12728. In the same colloquy, Representative Walter, the chairman of the subcommittee that conducted the pertinent hearings, recognized that certain forms of discretionary relief may be requested in the course of a

---

[13] See 375 U. S., at 223–224.

deportation proceeding, and stated that § 106 (a) would apply to the disposition of such requests, "just as it would apply to any other issue *brought up in deportation proceedings.*" 105 Cong. Rec. 12728 (emphasis added). Similarly, Representative Walter, in a subsequent debate, responded to a charge that judicial review under § 106 (a) would prove inadequate because of the absence of a suitable record, by inviting "the gentleman's attention to the law in section 242, in which the procedure for the examiner is set forth in detail." 107 Cong. Rec. 12179.

We believe that, in combination with the terms of § 106 (a) itself, these statements lead to the inference that Congress quite deliberately restricted the application of § 106 (a) to orders entered during proceedings conducted under § 242 (b), or directly challenging deportation orders themselves.[14] This is concededly "a choice between uncertainties," but we are "content to choose the lesser." *Burnet* v. *Guggenheim,* 288 U. S. 280, 288.

We need not speculate as to Congress' purposes. Quite possibly, as Judge Browning has persuasively suggested, "Congress visualized a single administrative proceeding in which all questions relating to an alien's deportation would be raised and resolved, followed by a single petition in a court of appeals for judicial review . . . ." *Yamada* v. *Immigration & Naturalization Service,* 384 F. 2d 214, 218. It may therefore be that Congress expected the Immigration Service to include within the § 242 (b) proceeding "all issues which might affect deportation." *Ibid.* Possibly, as *amicus* cogently urges, Congress wished to limit petitions to the courts of

---

[14] The Immigration Service has argued that the limiting language in § 106 (a) may be explained by Congress' wish to restrict its application to deportation cases, preventing its application to questions arising from exclusion proceedings. We have found nothing in the pertinent legislative history that offers meaningful support to this view.

appeals to situations in which quasi-judicial hearings had been conducted.[15] It is enough to emphasize that neither of these purposes would be in any fashion impeded by the result we reach today. We hold that the judicial review provisions of § 106 (a) embrace only those determinations made during a proceeding conducted under § 242 (b), including those determinations made incident to a motion to reopen such proceedings.[16]

This result is entirely consistent with our opinion in *Foti.* There, it was repeatedly stated in the opinion of THE CHIEF JUSTICE that the order held reviewable under § 106 (a) had, as the regulations required, been entered in the course of a proceeding conducted under § 242 (b). 375 U. S., at 218, 222–223, 224, 226, 228, 229, 232. It was emphasized that "the administrative discretion to grant a suspension of deportation," the determination involved in *Foti,* "has historically been consistently exercised as an integral part of the proceedings which have led to the issuance of a final deportation order." *Id.,* at 223. A suspension of deportation "must be requested prior to or during the deportation hearing." *Ibid.* Moreover, it was explicitly recognized that, although modification of the pertinent regulations might "effectively broaden or narrow the scope of review available in the Courts of Appeals," this was "nothing anomalous." [17]

---

[15] Note, *e. g.,* the apparent exclusion from § 106 (a) of orders entered under 8 U. S. C. § 1282 (b). See generally *supra,* n. 11.

[16] We intimate no views on the possibility that a court of appeals might have "pendent jurisdiction" over denials of discretionary relief, where it already has before it a petition for review from a proceeding conducted under § 242 (b). See *Foti* v. *Immigration Service, supra,* at 227, n. 14.

[17] The opinion of the Court emphasized, in addition, that "[c]learly, changes in administrative procedures may affect the scope and content of various types of agency orders and thus the subject matter embraced in a judicial proceeding to review such orders." *Id.,* at 230, n. 16.

*Id.*, at 229–230. An essential premise of *Foti* was thus that the application of § 106 (a) had been limited to orders "made during the same proceedings in which deportability is determined . . . ." *Id.*, at 224.

The *per curiam* opinion in *Giova* did not take a wider view of § 106 (a). The denial of an application to reopen a deportation proceeding is readily distinguishable from a denial of a stay of deportation, in which there is no attack upon the deportation order or upon the proceeding in which it was entered. Petitions to reopen, like motions for rehearing or reconsideration, are, as the Immigration Service urged in *Foti*, "intimately and immediately associated" with the final orders they seek to challenge.[18] Thus, petitions to reopen deportation proceedings are governed by the regulations applicable to the deportation proceeding itself, and, indeed, are ordinarily presented for disposition to the special inquiry officer who entered the deportation order.[19] The result in *Giova* was thus a logical concomitant of the construction of § 106 (a) reached in *Foti;* it did not, explicitly or by implication, broaden that construction in any fashion that encompasses this situation.

The result we reach today will doubtless mean that, on occasion, the review of denials of discretionary relief will be conducted separately from the review of an order of deportation involving the same alien. Nonetheless, this does not seem an onerous burden, nor is it one that cannot be avoided, at least in large part, by appropriate action of the Immigration Service itself. More impor-

---

[18] Brief for Respondent, No. 28, October Term 1963, at 53.

[19] See 8 CFR § 242.22. If, however, the order of the special inquiry officer is appealed to the Board of Immigration Appeals, a subsequent motion to reopen or reconsider is presented to the Board for disposition. *Ibid*. The motion in *Giova* was presented to the Board and decided by it.

tant, although "there is no table of logarithms for statutory construction,"[20] it is the result that we believe most consistent both with Congress' intentions and with the terms by which it has chosen to express those intentions.

*Affirmed.*

MR. JUSTICE WHITE, dissenting.

If the special inquiry officer had possessed jurisdiction to issue a stay order pending petitioner's efforts to obtain discretionary relief from the District Director, I take it that his denial of the stay, like a refusal to re-open, would have been appealable to the Court of Appeals. But, as I understand it, no stay could have been granted by the hearing officer and it was sought from the District Director as an immediate consequence of there being outstanding a final order of deportation, which, if executed, might moot the underlying request for relief from the District Director. Section 106 does not limit judicial review in the Court of Appeals to orders entered "in the course of" § 242 (b) proceedings, but extends it to all orders against aliens entered "pursuant" to such proceedings, that is, at least as Webster would have it,* "acting or done in consequence" of the § 242 (b) proceedings. Except for the order of deportation, there would have been no occasion or need to seek a stay. It hardly strains congressional intention to give the word "pursuant" its ordinary meaning in the English language. If there are reasons based on policy for the Court's contrary conclusion, they are not stated. I would reverse the judgment.

---

[20] Frankfurter, Some Reflections on the Reading of Statutes, *supra*, at 234.

* Merriam-Webster, Webster's New International Dictionary, Second Edition, unabridged (1957), defines "pursuant" as:

"1. Acting or done in consequence or in prosecution (of anything); hence, agreeable; conformable; following; according . . . .

"2. That is in pursuit or pursuing . . . ."