**Reza Mallihi SHOJA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 81–4232.

United States Court of Appeals, Fifth Circuit.

June 28, 1982.

---

Harry J. Joe, Eugene J. Flynn, Dallas, Tex., for petitioner.

Stephen M. Weglian, Jr., Lauri Steven Filppu, James A. Hunolt, Gen. Litigation and Legal Advice Section, Crim. Div., Dept. of Justice, Washington, D. C., for respondent.

Before GEE and SAM D. JOHNSON, Circuit Judges, and VAN PELT *, District Judge.

* District Judge of the District of Nebraska, sitting by designation.

VAN PELT, District Judge:

Reza Mallihi Shoja petitions this Court for relief from an order of the Board of Immigration Appeáls (BIA) finding him to be deportable for failing to attend the school he was admitted to attend. We affirm the finding of deportability by the BIA and decline to review the other issues raised by petitioner which arose from a denial by the District Director of a request to transfer schools.

In order to understand the conclusion we reach, a brief review of the facts and case law is necessary. Shoja is a citizen of Iran who entered this country at New York on November 11, 1979. His form I–94 shows he was admitted to attend an English language course at ELS New Castle Business College, New Castle, Pennsylvania. He never at any time attended this school. He was to remain in the United States as a student until February 28, 1980. Upon his arrival in New York, Shoja missed his flight to Pennsylvania. Petitioner's testimony at the deportation hearing before the Special Hearing Officer (Immigration Judge) indicated that, after missing his flight, he called his brother in Dallas

> and I ask him is it good if I go to Pennsylvania in this situation because I couldn't speak English anyway. I didn't know any [sic] about America—I didn't have any idea.[1]

The "situation" referred to by Shoja was the take-over of the American Embassy in Iran which had occurred approximately one week before Shoja's arrival. Petitioner's brother and sister-in-law had experienced hostility directed toward Iranians by United States citizens. Concerned for petitioner's safety, they told Shoja to come to Dallas, and instructed a woman working for one of the airlines to put him on the next flight to Dallas. He left New York City November 12th.

Once in Dallas, petitioner's relatives registered him for an English language course

1. Record on appeal at 34.

at Management Laboratories of America at the University of Dallas. After enrolling, Shoja, accompanied by his sister-in-law, went to the Immigration Service on approximately November 23, 1979, and presented forms requesting a transfer of schools. Shoja was interviewed at that time. The next day, November 24, 1979, an Order to Show Cause why Shoja should not be deported was issued. The District Director denied the request for transfer on January 10, 1980. The deportation hearing was held June 19, 1980, and that day he was found deportable on the ground that he failed to register at the school he was admitted to attend. On May 22, 1981, the Board of Immigration Appeals affirmed the Special Hearing Officer's finding of deportability.

Petitioner's contentions on appeal can essentially be broken down to the following issues:

1. Whether the Immigration Service erred in finding petitioner deportable because the regulations do not require attendance at a certain school, only that the petitioner enter the country intending to go to the school he is admitted to attend;

2. Whether both the BIA and Immigration Judge erred in failing to review the District Director's denial of permission to transfer; and

3. Whether the regulations giving the District Director exclusive discretion to deny a transfer violate due process and violate the underlying statutory authority and intent of Congress.

Petitioner further asks this court to review the transfer request on its merits.

At the outset, it is necessary to review this Court's jurisdiction. It is provided in § 106(a) of the Immigration and Nationality Act (hereinafter referred to as "the Act"), 8 U.S.C. § 1105a, that the procedure for judicial review of all final orders of deportation resulting from administrative proceedings under § 242(b) of the Act, 8 U.S.C. § 1252(b), shall be as stated in the Hobbs Act. *See* 5 U.S.C. § 1031–42. This vests the courts of appeals with exclusive jurisdiction from all final orders of deporta-

tion. Where the issues arise outside the scope of a § 242(b) proceeding, "the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court." *Cheng Fan Kwok v. I.N.S.*, 392 U.S. at 206, 210, 88 S.Ct. at 1970, 1973, 20 L.Ed.2d 1037 (1968). The difficulty has been determining what encompasses a final order of deportation.

The Supreme Court in *Foti v. I.N.S.*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) concluded that final orders of deportation included denials of suspension of deportation. The Court noted that it had been a consistent practice for a special hearing officer to pass upon the question of deportability and the application for discretionary relief in the same proceeding. The Court stated:

> [I]t seems rather clear that all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals, such as orders denying voluntary departure pursuant to § 244(e) and orders denying the withholding of deportation under § 243(h), are likewise included within the ambit of the exclusive jurisdiction of the Courts of Appeals under § 106(a).

*Id.* at 229, 84 S.Ct. at 313.

In *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam) the Supreme Court reversed and remanded a case to the Ninth Circuit Court of Appeals directing that they consider a petition for review from a denial of a motion to reopen.

The most recent Supreme Court case on the subject is *Cheng Fan Kwok, supra.* There the court determined that § 106(a) does not confer jurisdiction on a Court of Appeals to review the denial of a stay of deportation where the order denying it was not entered in the course of a § 242(b) administrative hearing before a special inquiry officer.

■ The first issue on appeal in this case centers on whether any grounds exist for deporting petitioner. It goes to the heart

of the issue before the Special Hearing Officer in the § 242(b) proceeding—can petitioner be deported for failing to attend the school he was admitted to attend? This is clearly an issue which this Court has jurisdiction to review. However, we find no merit to petitioner's argument that he was only required to have an intention to attend the school designated on his I–94 form at the time he was admitted, and that he was not required to actually attend such school. Section 241(a)(9) of the Act, 8 U.S.C. § 1251(a)(9), provides that any alien shall be deported who

> was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 248, or to comply with the conditions of any such status . . . .

Section 101(a)(15)(F)(i) of the Act, 8 U.S.C. § 1101(a)(15)(F)(i), provides that a nonimmigrant alien includes:

> an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established institution of learning or other recognized place of study in the United States, particularly designated by him and approved by the Attorney General after consultation with the Office of Education of the United States, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student . . . .

These two statutes make it clear that one of the qualifications for being classified as a nonimmigrant alien student is attending an institution approved by the Attorney General, and that failure to comply with such condition of status will result in deportation. The BIA and Special Hearing Officer were clearly correct in finding the petitioner was deportable as charged.

■ The remainder of petitioner's contentions concern whether the District Di-

rector should have exercised his discretion and granted petitioner's request to transfer schools, whether the discretionary denial is reviewable by the immigration judge, BIA, or this Court, and if such decision is not reviewable, whether the regulations violate both petitioner's right to due process and the intent of Congress. This Court does not have jurisdiction of any of these issues under § 106(a) because they do not arise during the course of a § 242(b) proceeding. This conclusion is dictated by *Cheng Fan Kwok, supra.*

The procedures and facts in *Cheng Fan Kwok* and the case at bar are strikingly similar. While *Cheng* involved a request for a stay of deportation instead of a school transfer, it did involve a discretionary denial by the District Director from which no appeal could be taken. Petitioner in *Cheng* challenged the exercise of the Director's discretion and the constitutionality of the regulations. The Supreme Court found that the District Director's order denying a stay of deportation did not constitute a final order of deportation, stating:

> A denial by a district director of a stay of deportation is not literally a "final order of deportation," nor is it, as was the order in *Foti*, entered in the course of administrative proceedings conducted under § 242(b). Thus, the order in this case was issued more than three months after the entry of the final order of deportation, in proceedings entirely distinct from those conducted under § 242(b), by an officer other than the special inquiry officer who, as required by § 242(b), presided over the deportation proceeding. The order here did not involve the denial of a motion to reopen proceedings conducted under § 242(b), or to reconsider any final order of deportation.

*Id.* 392 U.S. at 212–13, 88 S.Ct. at 1974 (footnotes omitted). The Supreme Court affirmed the Third Circuit's dismissal of the petition.

The facts of this case are no different. The District Director's denial of petitioner's transfer request came in proceedings that were entirely separate and distinct from

those conducted under § 242(b) by the special inquiry officer. Granted both proceedings arose out of the same fact situation, but the two proceedings themselves are separate and distinct.

We note that the Third Circuit was recently faced with a similar issue in *Dastmalchi v. I.N.S.*, 660 F.2d 880 (3d Cir. 1981).[2] They concluded that they did not have jurisdiction to consider attacks on the constitutionality of regulations implemented under the Immigration and Nationality Act, nor the denial of discretionary relief by the District Director. *Id.* at 890–91. *But see Chadha v. I.N.S.*, 634 F.2d 408 (9th Cir. 1980).[3]

Petitioner urges us to accept pendent jurisdiction of the school transfer issues since his first issue was properly before us. The Supreme Court has expressly declined to decide whether the courts of appeal would have pendent jurisdiction in such an instance. *See Cheng Fan Kwok, supra,* 392 U.S. at 216 n.16, 88 S.Ct. at 1976 n.16; *Foti, supra,* 375 U.S. at 227 n.14, 84 S.Ct. at 313 n.14. We decline to accept pendent jurisdiction in this instance where there is obviously little merit to the only contention over which we have jurisdiction. To do otherwise would encourage frivolous appeals from § 242(b) proceedings with the hope that this court would address the real issues of concern. The Second Circuit has essentially reached the same result in *Pang Kiu Fung v. I.N.S.*, 663 F.2d 417 (2d Cir. 1981) wherein it is stated:

> If review of a denial of a stay could be achieved by affixing it to an appeal from an order denying a motion to reopen with so little merit as that advanced here, the rule set down in *Cheng Fan Kwok* could be too easily circumvented.

*Id.* at 419.

The order of the Board of Immigration Appeals is AFFIRMED.

---

2. *Dastmalchi, supra,* involved three nonimmigrant alien students. Two of the students were charged with remaining in the country after their visas had expired; all three students had transferred schools without receiving approval. One of petitioners' contentions was that the I.N.S. should have overlooked these infractions and restored them to their status as students.

3. In *Chadha, supra,* the court held that:
   the phrase "final orders" includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing.

*Id.* at 412. From this basis, the court found it had jurisdiction to consider challenges to the constitutionality of the Immigration and Nationality Act. The statutory provision challenged was one which authorized either house of Congress to veto a suspension of deportation. *Chadha* is currently on appeal to the United States Supreme Court, which has postponed consideration on the question of jurisdiction, 454 U.S. 812, 102 S.Ct. 87, 70 L.Ed.2d 80, and heard oral argument, 50, 454 U.S. 1077, 102 S.Ct. 629, 70 L.Ed.2d 611. *Dastmalchi, supra,* thoroughly discussed *Chadha* and found that "the *Chadha* court's interpretation of section 106(a) is fundamentally at odds with *Cheng Fan Kwok*." *Dastmalchi, supra* at 888. The I.N.S. in their brief in this court was unwilling to say that the *result* reached in *Chadha* was incorrect, even though the language was at odds with *Cheng Fan Kwok*. See I.N.S. brief at 19 n.6. They point out that the congressional veto of the suspension of deportation was related to the hearing before the special inquiry officer. The facts show that the special inquiry officer found that *Chadha* met the requirements for a suspension, the House of Representatives disapproved the suspension, and the deportation hearings were then reconvened before the special inquiry officer. The I.N.S. contends that these actions were all a part of the deportation proceeding. We express no opinion on this argument. We do believe that there is no persuasive reason for accepting jurisdiction of the constitutional issues in this particular case. Even if we error in this regard, it is doubtful that the final result of deportation would be any different in this case. Petitioner has not been denied due process in this case because the Immigration Judge, BIA or this court has no jurisdiction to review the Director's decision. As was noted by both the Supreme Court in *Cheng Fan Kwok, supra,* 392 U.S. at 210, 88 S.Ct. at 1973, and the special hearing officer in this case, record at 22, the petitioner was not foreclosed from seeking declaratory relief in the district court. Likewise, it is also doubtful that the regulation requiring permission to transfer would be found invalid.