**Marlena RAMALLO, Plaintiff,**

v.

**Janet RENO, et al., Defendants.**

**Civil A. No. 95–01851(CRR).**

United States District Court, District of Columbia.

Jan. 29, 1996.

Robert S. Bennett, Richard L. Brusca, and Katharine S. Sexton, Skadden, Arps, Slate, Meagher & Flom, Washington, DC, for plaintiff.

Michelle R. Slack, Office of Immigration Litigation; Frank W. Hunger, Assistant Attorney General; Gary G. Grindler, Deputy Assistant Attorney General; Robert L.

Bombaugh, Director, Office of Immigration Litigation; and Philemina McNeill Jones, Assistant Director, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court is the defendants' Motion to Dismiss for lack of subject matter jurisdiction, filed on December 8, 1995 in the above-captioned case, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff filed an Opposition thereto on December 22, 1995, to which the Defendants Replied on January 5, 1996.[1] Upon careful consideration of the pleadings, the entire record herein, the law applicable thereto, and for the reasons set forth below, the Court shall deny the defendants' Motion to Dismiss. Furthermore, the Court shall set a schedule for the expeditious resolution of this case.

### BACKGROUND

#### The Deportation Proceedings

The plaintiff in the above-captioned case is Marlena Ramallo Kent Cooke, a native and citizen of Bolivia. She initially entered the United States in 1972 as a nonimmigrant visitor, and became a lawful permanent resident in 1978. *See In re Cooke,* No. A20 619 534 (Bd.Imm.App. Mar. 10, 1994), at 1.

On August 1, 1986, the plaintiff pled guilty to the offense of conspiracy to distribute less than one kilogram of cocaine in violation of 21 U.S.C. § 963. In return for a reduced sentence, she agreed to cooperate with federal authorities in their investigation of a related drug-smuggling operation. The plaintiff was initially sentenced to serve 18 months incarceration, but her term was later modi-

fied, and she served 5½ months in prison with a 2 year period of probation. *Id.*

In November 1986, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause in the plaintiff's case, charging her with deportability under section 241(a)(11) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(11),[2] as a result of her criminal conviction. *Id.* At a deportation hearing in April 1988, the plaintiff conceded deportability and applied for relief from deportation pursuant to section 212(c) of the INA. *Id.* Also at that hearing, the plaintiff denied that she had ever knowingly used, possessed, sold, or trafficked in cocaine, although she admitted that she had traveled to Rio de Janeiro, as alleged in her indictment, in the company of individuals who subsequently were convicted of importing cocaine. *Id.* at 2. The plaintiff testified that as a result of her conviction, she assisted government officials in this country in their apprehension of narcotics traffickers. *Id.* The Immigration Judge ("IJ") adjourned the proceedings so that the plaintiff could obtain the appearance of the federal officers with whom she had cooperated. *Id.*

When the hearing resumed in May 1988, the parties entered into an agreement concerning the plaintiff's case. An attorney for the INS stated that the plaintiff "is going to withdraw the requested relief under 212(c) and is prepared for an order of deportation from this Court and is also prepared to waive appeal on this case." *Id.* The INS agreed that the plaintiff "is not going to be taken into custody, ... and that there is an agreement of all the parties that there will be an additional request made to the district director which is beyond the court's jurisdiction as far as the effect of the order of deportation." *Id.* Accordingly, the IJ entered an order on May 10, 1988 finding the respondent deportable and ordering her de-

---

1. On January 11, 1996, the plaintiff filed a Motion for Leave to File Surreply, to which the defendants filed an Opposition on January 18, 1996. The Court found the Surreply to be unnecessary and did not consider the Surreply for the purpose of deciding the extant Motion to Dismiss. Thus, the Court shall deny the plaintiff's Motion for Leave to File Surreply.

2. Section 241(a)(11) is now section 241(a)(2)(B) of the INA, 8 U.S.C. § 1251(a)(2)(B), and reads:
   Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable.

ported. *Id.* No appeal was taken from that order. *Id.*

On February 10, 1992, the INS moved to reopen the plaintiff's deportation proceedings, stating that, "in the time that has passed since the original order of deportation was entered, the [plaintiff] has been extremely helpful to the government of the United States and has provided critical information that has resulted in the successful prosecution of many drug-related cases in the Eastern District of Virginia." *Id.* at 3. The plaintiff's attorney joined in that motion and, in a decision dated February 20, 1992, the IJ reopened the plaintiff's deportation proceedings. *Id.* On March 17, 1992, the IJ gave the plaintiff's attorney one week to file a Form I–191 in support of the plaintiff's application for relief from deportation. The Form was not submitted, however, and on April 15, 1992, the IJ issued a decision denying the plaintiff's request for section 212(c) relief for lack of prosecution due to her failure to file the required Form. The IJ also denied the requested relief, finding that the plaintiff was not statutorily eligible following the cessation of her lawful permanent resident status when she did not appeal the May 10, 1988 deportation order. The plaintiff appealed from the April 15, 1992 decision of the IJ at the Board of Immigration Appeals ("Board"). *Id.*

The INS, which previously did not oppose reopening the plaintiff's deportation proceedings, changed its position on appeal based on information that the plaintiff made seven trips outside the United States between July 5, 1989 and March 29, 1992. The INS attorneys were "apparently unaware" of this information prior to the appeal. On the basis of this information, the INS attorneys moved to dismiss the plaintiff's appeal, contended that the plaintiff had "self-executed" the 1988 deportation order and, therefore, that reopening the proceedings was improper pursuant to section 106(c) of the INA. *Id.*[3]

The plaintiff raised a number of arguments on appeal. Most relevant to the instant action, the plaintiff argued that, at the time of the 1988 hearing, the INS and her former attorney entered into an agreement whereby, in return for her withdrawal of her section 212(c) application and her acceptance of a final order or deportation, the INS would not enforce her deportation and would permit her to continue to remain in the United States in consideration for her assistance to government officials in their prosecution of drug traffickers. *Id.* at 5. The plaintiff submitted an affidavit of the attorney who represented her at the 1988 hearing. The attorney averred that it was his understanding that the INS, in return for the plaintiff's cooperation, would not enforce the plaintiff's deportation order, would permit her to travel outside the United States, would continue her bond, and would quash the deportation order at some future date. The plaintiff also submitted evidence, including correspondence and memoranda from the government substantiating her claim.[4] The plaintiff maintained that the INS should be estopped from seeking her deportation and that it should be required to honor its part of the agreement concerning her status. *Id.* The plaintiff also asserted a claim of ineffective assistance of her former attorney because, *inter alia*, he did not obtain a clear commitment in writing from the INS, nor did he timely submit her section 212(c) application. *Id.* at 6.

On March 10, 1994, the Board dismissed the plaintiff's case for want of jurisdiction. Specifically, the Board held that the plaintiff's departures from the United States subsequent to her order of deportation divested the Board of jurisdiction to consider any motion to reopen the deportation proceedings. *Id.* at 6. As for the alleged agreement not to enforce her departure, the Board stated that it was without the power to enforce such an agreement, even if one existed. *Id.* at 8. In that regard, the Board noted that

---

3. *See* 8 U.S.C. § 1101(g) (any alien ordered deported who has left the United States, shall be considered to have been deported in pursuance of law); 8 U.S.C. § 1105a(c) (an order of deportation or of exclusion shall not be reviewed by any court if the alien has departed from the United States after the issuance of the order).

4. The plaintiff asserts that she will face grave danger if she is deported to Bolivia—into the waiting arms of the very criminal enterprises she disrupted. Plaint.Opp. at 3–4.

the plaintiff's claim was similar to an estoppel defense, which the Board has held it is without authority to apply. On April 8, 1994, the plaintiff filed a petition for review of the Board's decision with the United States Court of Appeals for the Fourth Circuit. *See Cooke v. Immigration and Naturalization Service*, No. 94–1456 (4th Cir. filed Apr. 8, 1994). Deportation proceedings have been held in abeyance pending review by the Fourth Circuit. Def.Mot. to Dismiss at 3.

On May 10, 1994, the plaintiff moved to have the Fourth Circuit proceedings held in abeyance pending attempts to settle the case. The defendants did not object and negotiations commenced. Efforts at settlement continued unsuccessfully until September 28, 1995. Def.Mot. to Dismiss at 4.

### The Instant Action

On September 28, 1995, the plaintiff filed the instant action in this Court, alleging violations of the plaintiff's Fifth Amendment rights, breach of contract, and promissory and equitable estoppel. The plaintiff asks this Court to accord her the following relief:

(1) an order declaring that the May 1988 agreement is a legal and binding obligation of the government;

(2) an order declaring the INS deportation order null and void;[5]

(3) specific enforcement of the agreement by permanently enjoining the government from taking any further action to deport the plaintiff or refuse her reentry into the United States to the extent the plaintiff travels abroad;

(4) specific enforcement of the agreement by requiring the government to take any and all actions necessary to restore the plaintiff's status as a permanent resident of the United States; and

(5) an award of her costs, including attorneys' fees, incurred as a consequence of the defendants' breach of the agreement.

*See* Complaint at 23–24.

After filing the instant action, the plaintiff filed a motion to again hold the Fourth Circuit proceedings in abeyance, pending this Court's decision. The defendants vigorously opposed the plaintiff's Motion on the ground that the Fourth Circuit has exclusive jurisdiction over this case pursuant to section 106(a) of the INA. *See* Def.Mot. to Dismiss, Exh. 4, at 7. The Fourth Circuit granted the plaintiff's Motion to hold its proceedings in abeyance pending the outcome of the case in this Court. *See Cooke v. Immigration and Naturalization Serv.*, No. 94–1456 (4th Cir. Nov. 7, 1995) (Order). In a single-judge order, the Fourth Circuit opined:

It appearing to me that at one time, at least, in the recent past the government had an agreement with Marlena Kent Cooke that she could apply for a waiver of deportation, or like provision for her to live in the United States, if she were helpful to the government in the prosecution of certain criminal cases. And it further appearing that she may well have, and probably has, lived up to her part of the agreement, but that the government now opposes a decision on the merits of her application for a waiver of deportation or provision to live in the United States, for some reason which is not clear to me. The said Marlena Kent Cooke has sued the government in the United States District Court for the District of Columbia, seeking to enforce the said agreement, in *Romallo v. Reno, et al.* No. 1:95CV01851, and on that account seeks to have the proceedings in this case held in abeyance.

I am of [the] opinion Marlena Kent Cook [sic] should be permitted to pursue her said case in the district court in the District of Columbia.

*Id.* at 2 (Widener, Jr., J.).

The defendants now move for dismissal on the basis that this Court lacks subject matter jurisdiction over the plaintiff's Complaint. The defendants argue that the plaintiff's action here "seeks to review the validity of a matter on which her final order of deportation is contingent and requests relief inconsistent with a final order of deportation, which is within the exclusive jurisdiction of

---

**5.** Since filing her Complaint, the plaintiff has asserted that her request to have the INS deportation order declared null and void is moot.

the court of appeals" under section 106(a) of the INA. Def.Mot. to Dismiss at 4. Furthermore, the defendants argue that the plaintiff's departure from the United States while under a final order of deportation "self-executed" the order of deportation and thereby removed this Court's jurisdiction over the order pursuant to section 106(c) of the INA. *Id.* at 4–5. In support of her Opposition to the Motion to Dismiss, the plaintiff asserts that this Court has jurisdiction over the claims alleged and the relief sought under 28 U.S.C. § 1331, notwithstanding the immigration context in which they arise. Plaint.Opp. at 9.

## DISCUSSION

### I. THE COURT HAS A DUTY TO ENSURE THAT IT HAS SUBJECT MATTER JURISDICTION OVER THE INSTANT ACTION.

At the outset, the Court will address the parties' contentions regarding the Fourth Circuit's November 7, 1995 order, which held its proceedings in abeyance so that the plaintiff could pursue her case in this Court. The plaintiff argues that, since the same jurisdictional issue raised here was also raised by the defendants in opposition to the plaintiff's motion for abeyance in the Fourth Circuit, relitigation of that issue is precluded. In response, the defendants argue that the Fourth Circuit did not address the jurisdictional issue when it granted the plaintiff's request for abeyance. Furthermore, the defendants argue that the single-judge order issued by the Fourth Circuit should not be accorded preclusive or binding effect. *See* Fed.R.App.P. 27(c) ("a single judge may not dismiss or otherwise determine an appeal or other proceeding ... [and orders] of a single judge may be reviewed by the court."); *Pioneer Properties, Inc. v. Martin,* 776 F.2d 888 (10th Cir.1985) (single judge order has limited effect); *Thomson v. Merit Sys. Protection Bd.,* 772 F.2d 879 (Fed.Cir.1985) (same); *Locke v. Allstate Ins. Co.,* 696 F.2d 1340 (11th Cir.1983) (same).

■ Indeed, the government's opposition to the plaintiff's request for abeyance in the Fourth Circuit was premised on the very same jurisdictional argument the government levies before this Court. Therefore, it is fair to suppose that, in deciding to grant the plaintiff's motion for abeyance, the Fourth Circuit considered and ultimately rejected the defendants' position regarding jurisdiction. However, in its order, the Fourth Circuit did not articulate a ruling on jurisdiction; thus, one might also assume that the Fourth Circuit granted a stay for prudential or other reasons. In any event, it is the duty of this and every Court to determine whether it has subject matter jurisdiction over an action before it. *See* Fed.R.Civ.P. 12(h)(3) ("*Whenever* it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") (emphasis added); *accord Market St. Assocs. Ltd. Partnership v. Frey,* 941 F.2d 588, 590 (7th Cir.1991) (bench and bar have "nondelegable duty to police the limits of federal jurisdiction with meticulous care"). Thus, without attempting to interpret the Fourth Circuit's order beyond the fact that it granted a stay, the Court will proceed to determine the question of its jurisdiction.

### II. THE PROVISIONS OF SECTION 106(a) OF THE INA ARE INAPPLICABLE TO THE PRESENT ACTION; THE COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 31 U.S.C. § 1331.

■ Section 106(a) of the INA provides that the courts of appeals shall have exclusive jurisdiction to review all final orders of deportation made against aliens pursuant to administrative deportation proceedings under section 1252(b) and 1252a of Title 8 of the United States Code. However, when section 106(a) is inapplicable, an alien's remedies ordinarily lie first in an action brought in an appropriate district court. *Cheng Fan Kwok v. Immigration and Naturalization Serv.,* 392 U.S. 206, 210, 88 S.Ct. 1970, 1973, 20 L.Ed.2d 1037 (1968).

■ Although they take issue with its terms and legal effect, the defendants do not dispute that an agreement was made with the plaintiff. The defendants argue that, because section 106(a) grants exclusive authority to the Courts of Appeals to review all

final orders of deportation, this Court is divested of jurisdiction to review the agreement since specific enforcement of the agreement would affect the plaintiff's final order of deportation. The defendants also assert that the terms of the alleged agreement were examined and denied by the Board when it considered the plaintiff's motion to reopen and, thus, that "relitigation" of the agreement is barred by collateral estoppel. Def. Mot. to Dismiss at 5 & n. 4.

The defendants' argument that the terms of the agreement were examined and denied by the Board is somewhat disingenuous. The Board dismissed the plaintiff's appeal for want of jurisdiction and further determined that it lacked jurisdiction over the alleged agreement between the plaintiff and the government; whatever statements the Board may have expressed concerning the terms and effect of the agreement were dicta and, therefore, the plaintiff cannot be estopped from pursuing her claims concerning the agreement. *See Yamaha Corp. of America v. United States,* 961 F.2d 245, 254 (D.C.Cir. 1992) (issue must be "actually and necessarily determined" to create collateral estoppel bar in subsequent litigation), *cert. denied,* 506 U.S. 1078, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993).

■ The Supreme Court has squarely rejected the notion that section 106(a) embraces all determinations directly affecting the execution of the basic deportation order. *See Cheng Fan Kwok,* 392 U.S. at 213, 88 S.Ct. at 1975 ("If . . . 106(a) embraces all determinations 'directly affecting the execution of' an final deportation order, Congress has selected language remarkably inapposite for its purpose."). Rather, "[t]reating the statutory language and legislative history of Section 106(a) and its character as a jurisdictional provision, the Court concluded 'that Congress quite deliberately restricted the application of 106(a) to orders entered during proceedings conducted under 242(b), or directly challenging deportation orders themselves.' " *Butterfield v. Immigration and Naturalization Serv.,* 409 F.2d 170, 173

(D.C.Cir.1968) (quoting *Cheng Fan Kwok,* 392 U.S. at 215, 88 S.Ct. at 1975–76). The Court "accordingly held 'that the judicial review provisions of 106(a) embrace only those determinations made during a proceeding conducted under 242(b), including those determinations made incident to a motion to reopen such proceedings.' " *Id.* (quoting *Cheng Fan Kwok,* 392 U.S. at 216, 88 S.Ct. at 1976); *see also Foti v. Immigration and Naturalization Serv.,* 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) (courts of appeals have initial, exclusive jurisdiction under 106(a) to review discretionary determination of the Attorney General relating to the suspension of deportation). For the purposes of section 106(a), the term "final orders" includes "all matters on which the validity of the final order is contingent." *Immigration and Naturalization Serv. v. Chadha,* 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983).

■ Here, the plaintiff's Complaint does not challenge the validity of the deportation order or a determination made in the deportation proceedings. Her direct challenge of the deportation order is the subject of her action with the Court of Appeals for the Fourth Circuit. Rather, the plaintiff alleges breach of an agreement and violation of her Fifth Amendment rights due to the alleged breach. The plaintiff seeks specific enforcement of the agreement, by which the government allegedly is obligated to ensure that the plaintiff may remain in this country, regardless of a finding of deportability or an order of deportation and independent of the administrative deportation proceedings. In this regard, the Court notes that at a deportation hearing, the defendants expressly acknowledged the existence of an agreement "that there [would] be an additional request made to the district director which is beyond the Board's jurisdiction as far as the effect of the order of deportation." *See* Def.Mot. to Dismiss, Exh. 1, at 2.[6] Thus, the defendants have themselves indicated that an agreement obligated the government to undertake activities wholly outside the plaintiff's administra-

---

6. In their opposition to the plaintiff's request for abeyance in the Fourth Circuit, the defendants expressly disclaimed having taken any position

as to the Board's jurisdiction to consider the alleged agreement, reserving their right to state a position at a subsequent time.

tive deportation proceedings. Were the Court to interpret section 106(a) to apply to any action the government could take to allow an alien to remain in the United States, the Court would be ignoring the express language of 106(a) rendering that section applicable to deportation proceedings under 1252(b) and 1252a of Title 8. *Cf. Butterfield,* 409 F.2d at 173 (district court has jurisdiction when the alien's application for reclassification did not impugn either the finding of deportability or the order directing deportation, but instead sought an alternative solution for alien's immigration woes).

The Court notes that there are circuit court cases decided pursuant to section 106(a) that deal with challenges to deportation based on alleged breaches of cooperation agreements with the INS. *See Margalli–Olvera v. Immigration and Naturalization Serv.,* 43 F.3d 345 (8th Cir.1994); *Thomas v. Immigration and Naturalization Serv.,* 35 F.3d 1332 (9th Cir.1994). However, the cooperation agreements at issue in those cases obligated the government to take certain positions at administrative deportation proceedings. Thus, the agreements related only to determinations that would be made during those deportation proceedings. Here, the agreement allegedly calls for the plaintiff to concede deportability and to waive her rights of appeal in return for activity by the government outside the deportation proceeding. Original jurisdiction over such an action lies with a district court pursuant to 28 U.S.C. § 1331. *See Butterfield,* 409 F.2d at 173.

III. SECTION 106(c) OF THE INA DOES NOT DIVEST THE COURT OF JURISDICTION OVER THE PRESENT ACTION.

■ Finally, the defendants argue that this Court is without jurisdiction because section 106(c) of the INA precludes review of a final order of deportation by any court when the alien has departed the country after the issuance of the order. This argument misses the point. The jurisdiction of this Court has not been invoked to review the final order of deportation in the plaintiff's case, nor could this Court exercise such jurisdiction for the reasons expressed above. Thus, section 106(c) is inapplicable to the present action.

**CONCLUSION**

For the above reasons, the Court shall deny the defendants' Motion to Dismiss. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion and setting a schedule for the expeditious resolution of this case.

In order to protect the safety of the plaintiff and her family, and that of certain government agents involved, limited portions of the record in the above-captioned case remain under seal, specifically, the names of persons against whom the plaintiff testified when cooperating with the government and the identity of the agents with whom she cooperated. The foregoing Memorandum Opinion and the Order issued of even date herewith are not under seal and shall be made a part of the public record in the above-captioned case.