**Emil and Gabriela BOTEZATU, Plaintiffs–Appellants,**

**v.**

**IMMIGRATION AND NATURALIZA-TION SERVICE and Bryan Perry-man, Chicago District Director of the Immigration and Naturalization Ser-vice, Defendants–Appellees.**

No. 98–4155.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1999.

Decided Oct. 21, 1999.

Rehearing and Rehearing En Banc Denied Dec. 6, 1999.

Robert A. Perkins (argued), Perkins & Associates, Chicago, IL, Joseph Zinger, Schaumburg, IL, for plaintiffs-appellants.

James G. Hoofnagle, Jr., Office of U.S. Attorney, Civil Division, Chicago, IL, Papu Sandhu (argued), Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for defendants-appellees.

Before COFFEY, EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Emil Botezatu, a native of Romania, entered the United States as a non–immigrant alien in transit on March 19, 1993 with his fiancé Gabriela, also Romanian, with whom he had been living nearly continuously since 1988. Upon arrival, each filed a claim for political asylum with the Immigration and Naturalization Service. Her application for asylum was granted and she became a lawful permanent resident alien, but his application was denied. He was authorized to remain until March 24, 1993, but he did not leave this country at that time. In June 1994, the INS issued an order to show cause alleging that he was deportable as an alien who remained in the United States beyond the authorized period. *See* 8 U.S.C. §§ 1227, 1231(a)(1)(B). On June 30, 1995, an immigration judge found Botezatu deportable, denied his asylum application, and granted his application for voluntary departure.

On August 17, 1995, Botezatu married Gabriela. In January 1996, she filed a visa petition on her husband's behalf as a spouse of a permanent resident. The INS approved the petition, but no visas in the permanent resident category were available for him. On August 5, 1996, the Board of Immigration Appeals (the "Board") affirmed the immigration judge's decision of June 30, 1995, indicating that Botezatu might apply for an extension of the voluntary departure period. He petitioned this court to review the Board's decision but did not apply for an extension.

In April 1997, we denied his petition in an unpublished order.

Botezatu requested that the INS District Director reinstate his voluntary departure. The District Director denied this request because, he said, Botezatu had violated the terms of his voluntary departure by failing to seek an extension after the Board's decision. The INS agreed, however, to postpone Botezatu's deportation while his request was pending for humanitarian parole or deferred action on the grounds of his desire to remain in this country with his wife. The agency denied this request in February 1998. Botezatu filed for a stay of deportation, but in March 1998, the District Director denied this application and the INS then ordered Botezatu to report for deportation on March 31, 1998.

On that date, however, the Botezatu's instead filed this lawsuit in federal district court contesting several determinations of the Board relating to Emil Botezatu's deportation. They alleged that the district court had subject matter jurisdiction under 42 U.S.C. § 1983 (civil rights), 5 U.S.C. § 701 *et seq.* (the Administrative Procedure Act), and 28 U.S.C. §§ 1331 (federal question jurisdiction) and 2241 (*habeas corpus*). Their complaint alleged that several actions or decisions of the Board violated various amendments to the federal Constitution, provisions of the International Covenant on Civil and Political Rights, and customary norms of international law. The INS argued that the complaint should be dismissed for want of subject matter jurisdiction and the district court agreed, dismissing the case on November 20, 1998. The Botezatus appeal.

We review a dismissal for want of subject matter jurisdiction *de novo*. *Jones v. United States*, 112 F.3d 299, 301 (7th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 173, 139 L.Ed.2d 115 (1997). At issue is whether this case is governed by § 242(g) of the Immigration and Nationality Act ("INA"), as amended by § 306(a) of

the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009–546 ("IIRIRA"), and the proper interpretation of this provision in view of recent caselaw. The statute reads:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g).[1] The Supreme Court has recently rejected the interpretation that "§ 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) ("*ADC*"). In *ADC*, the Court held that § 1252(g) precludes only review of the three discretionary decisions or actions listed in the statute, namely, decisions to "'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* The Botezatus argue that § 1252(g) does not apply to their case because they do not challenge any of these three listed types of decisions, but only the constitutionality of various post–deportation procedures. In particular, the Botezatus contend that the district court has jurisdiction over their claims attacking the INS's decisions in: (1) refusing to grant Botezatu's request for a stay of deportation, (2) failing to reinstate his administrative grant of voluntary departure, and (3) denying his request for humanitarian relief in the form of humanitarian parole.

■ The plaintiffs' arguments are not persuasive. They claim that the district court has jurisdiction over the INS's refusal to issue a stay of deportation, citing *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). There the Supreme Court read the former INA § 106(a)(10), the then–effective immigration habeas provision, to provide a jurisdictional basis for a district court to review a stay of deportation. The Court held that in such an attack, the "petitioner did not attack the deportation order itself." *Id.* at 213, 88 S.Ct. 1970. Unfortunately for the Botezatus, the statutory provision construed in *Cheng* which formerly allowed for the review they request has been repealed by § 401(e) of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *see LaGuerre v. Reno,* 164 F.3d 1035, 1038 (7th Cir.1998), and the jurisdictional basis for district court review of a stay of deportation was removed by § 1252(g). In interpreting § 1252(g), the Supreme Court has disapproved *Cheng,* treating denial of a stay of deportation as one of "various decisions ... leading up to or consequent upon final orders of deportation" which was within the scope of § 1252(g). *ADC,* 119 S.Ct at 944. The plaintiffs cite several cases suggesting that, notwithstanding § 1252(g), a district court may review denials of some other forms of ancillary relief not at issue here. Perhaps so. However, in *ADC,* the Supreme Court has indicated that a denial of a stay of deportation is not among the actions or decisions to which § 1252(g) is inapplicable.

The plaintiffs further contend that the Supreme Court's limited holding in *ADC* about the short list of decisions over which the district court lacks jurisdiction under § 1252(g) (decisions to commence proceedings, adjudicate cases, or execute removal orders) means that the district court has jurisdiction to review the refusal to reinstate Botezatu's voluntary departure or to

---

1. Botezatu's case is governed by the IIRIRA transition rules because removal proceedings commenced in this case before April 1, 1997. Thus, we consider the effect only of section 1252(g), and not any other subparts of that section. *See Lalani v. Perryman,* 105 F.3d 334, 336 (7th Cir.1997) (as of April 1, 1997, subsection (g) will apply retroactively, unlike the other subsections).

grant him humanitarian parole or deferred action. This, they argue, is because they do not make a direct attack upon the final order of deportation nor on an order made during the deportation proceedings. The relief they request is not, therefore, on the list of precluded items. However, in *ADC*, the Supreme Court unambiguously read " 'no deferred action' decisions and similar discretionary determinations" as governed by § 1252(g), saying that Congress intended to give these sorts of determinations "some measure of protection" from judicial review and provided that "if they are reviewable at all, they at least will not be made bases for separate rounds of judicial intervention." 119 S.Ct. at 944. Review of refusal to grant deferred action is for this reason excluded from the jurisdiction of the district court.

■ The question remains whether the INS's refusal to grant humanitarian parole or to reinstate Botezatu's voluntary departure falls within the class of "similar discretionary determinations" which the Supreme Court treated as relevantly analogous to "no deferred action" decisions, and so within the scope of § 1252(g). The plaintiffs themselves concede that humanitarian parole is a sort of relief functionally equivalent to deferred action— they request these two kinds of relief in the alternative. In any event they fail to suggest any distinctions among deferred action, humanitarian parole and voluntary departure which would exclude the latter two from the scope of § 1252(g) if deferred action comes under it. The distinction, if any, was theirs to make, and since they did not make it, the point is waived. *See Parrillo v. Commercial Union Ins. Co.*, 85 F.3d 1245, 1249–1250 (7th Cir.1996). The district court, then, had no jurisdiction over the Botezatus' claims, and was correct to dismiss the claims on that basis.

AFFIRMED.