**Asefgholi BAZRAFSHAN, Petitioner,**

v.

**James W. POMEROY, District Director, Immigration & Naturalization Service, Respondent.**

Civ. A. No. 84–2191.

United States District Court, D. New Jersey.

July 9, 1984.

Leo Raychuk, New York City, for petitioner.

W. Hunt Dumont, U.S. Atty. by Ruth V. Simon, Sp. Asst. U.S. Atty., Newark, N.J., for respondent.

## OPINION

STERN, District Judge.

Petitioner Asefgholi Bazrafshan asks the Court to overturn the Immigration and Naturalization Service (INS) District Director's denial of his request to stay deportation pending the outcome of his motion to reopen proceedings, currently before the Board of Immigration Appeals (BIA), claiming that if he is deported to Iran he will be killed. We will grant petitioner's request.

## I.

Petitioner, a 31-year old Iranian, lawfully entered this country on a student visa in August, 1977, in order to attend school in New York. In August, 1979, he visited Iran briefly, and then returned to this country. In November, 1979, the INS discovered that petitioner was attending Essex County College in New Jersey without its permission; the INS, however, approved the change of schools post facto.

On January 29, 1980, petitioner requested permission to do part-time work while attending school, which was granted by the INS on April 30, 1980. On December 9, 1980 and February 21, 1981, the INS asked that petitioner submit transcripts from his school, but according to the INS he responded to neither request. On March 23, 1981, the INS wrote to petitioner and instructed him to appear for an interview regarding his student status; petitioner did not respond.

On September 17, 1981, petitioner was interviewed by the INS as he had failed to register for school and was working full-time without the permission of the INS. The INS issued an order to show cause why petitioner should not be deported, and petitioner responded by applying for political asylum under 8 U.S.C. § 1158(a) or withholding of deportation under 8 U.S.C. § 1253(h). On December 3, 1982, the State Department issued an advisory opinion on petitioner's asylum application that concluded that petitioner had failed to establish a well-founded fear of being persecuted upon his return to Iran within the meaning of the United Nations Convention and Protocol Relating to the Status of Refugees.

A formal hearing on deportation was held before an Immigration Judge on January 13, 1983. The judge noted that petitioner testified that he had served in the Iranian Army in 1971 and 1972, where he had been responsible in part for the handling of certain army personnel records. Petitioner stated that when he returned briefly to Iran in 1979 he approved of the Khomeini regime, but later he became disenchanted with that government. Petitioner also testified that he had taken part in anti-Khomeini demonstrations in Washington, D.C. and New York. The Immigration Judge held that petitioner had not provided sufficient evidence to show that there was a clear probability of persecution upon his return to Iran, or that he had a well-founded fear that his life or freedom would be threatened. Thus, petitioner's application for asylum or withholding of deportation due to threats on his life was denied.

The Immigration Judge's decision was appealed to the Board of Immigration Appeals (BIA) on January 17, 1983. On September 21, 1983, the BIA dismissed the

appeal, concluding that petitioner had failed to sustain his burden of establishing that he would be persecuted or that he had a well-founded fear of persecution upon deportation to Iran. The BIA granted petitioner a voluntary departure until October 21, 1983, but petitioner failed to leave as ordered. A warrant of deportation was issued on October 22, and petitioner was advised to surrender for deportation on November 29, 1983.

On November 14, 1983, an attorney for petitioner called the INS and stated that he was trying to get a visa for his client to enter Kuwait where petitioner's two brothers were residing. A second call to the INS was made on November 15, but no request for a stay of deportation was made. Petitioner did not show up on the November 29 surrender date. On April 26, 1984, petitioner's case was referred to the investigations department of the INS in order to locate petitioner for deportation; on May 10, he was located and brought to the INS to effect his removal. On May 17, the INS requested from the Washington office the travel document needed to effectuate deportation, but also told petitioner that if he could obtain official permission to enter another country by the time his travel document arrived, that the INS would send him to that country instead of Iran.

On June 12, 1984, petitioner sought the Court's habeas corpus jurisdiction in requesting a stay of deportation. Noting that petitioner had let lapse the six month time period for direct appeal to the Third Circuit Court of Appeals from the adverse decision of the BIA, we held that administrative remedies were nonetheless available which petitioner had failed to exhaust. The petition for a writ of habeas corpus was therefore dismissed for lack of subject matter jurisdiction.

Petitioner quickly sought a stay of deportation from the District Director, and at the same time filed a motion to reopen with the BIA, asserting that he had "new" evidence to present. This evidence, not made known to the INS or the BIA in prior proceedings, was that petitioner had been since July, 1983, a member of an Islamic group devoted to the overthrow of the Khomeini regime. Petitioner also reported to the District Director that since March, 1984, the Khomeini government had been searching for his brother in order to try him in an Islamic Court. Convinced that this proceeding would be a sham, petitioner's brother fled to either Kuwait or Saudi Arabia. Petitioner stated that his mother, who still lives in Iran, reports that Iranian security police have repeatedly inquired as to the whereabouts of both petitioner and his brother. Petitioner claimed that upon information and belief he had been "positively identified by the Khomeini regime as a certain target for barbaric persecution and would be summarily executed if he were ever unfortunate enough to enter its jurisdiction." Petitioner's failure to reveal this information until this late date was attributed to the fact that he was terrified that both he and his family would be actively persecuted. Petitioner claimed that he was unable to verify this information because he was currently incarcerated in an INS alien detention facility.

The District Director denied the application for a stay of deportation for a number of reasons. First, he found that it was "worth noting" that petitioner had failed to supply any evidence to substantiate the claims that he would be executed or persecuted upon his return to Iran. Second, he determined that petitioner had had ample time to obtain a visa to enter another country, and therefore a stay was not justified in order to allow more time for this purpose. Finally, the District Director reported that on June 14, 1984, petitioner called the INS deportation officer John Scott and requested that every effort be made to obtain a travel document so he could go home to Iran—in view of this, the District Director voiced "serious doubts regarding the genuineness of [petitioner's] fear of persecution or dying at the hands of the

Khomeini Regime should he return to Iran." [1]

Petitioner, as mentioned above, also filed a motion on June 13, 1984, to reopen his deportation proceeding with the BIA. In connection with this motion, petitioner requested by telephone a stay of deportation from the BIA pursuant to 8 C.F.R. § 242.-22 (1984). The BIA denied by telephone on June 14 the request for the stay, on the ground that there was little likelihood that the pending motion to reopen would be granted. Petitioner then returned to this Court.

## II.

 It is not disputed that our habeas corpus jurisdiction extends to the review of the District Director's denial of petitioner's request for a stay, nor do the parties disagree that the proper standard of review is whether the District Director's decision was an abuse of discretion. *See Cheng Fan Kwok. v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Foti v. INS*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).[2] We now hold that there was an abuse of discretion.

Were not a man's life at stake, we could find no abuse of discretion by the District Director, particularly given the narrow scope of review this standard entails. It is undeniable that petitioner repeatedly refrained from using available administrative and judicial channels for obtaining the relief he now seeks: he failed to appeal the BIA's final deportation order; he failed to obtain a visa to enter a country other than Iran, even after the INS told him that this was acceptable; and he attempted to get relief from this Court without having exhausted any administrative

remedies. In addition, petitioner has consistently refused to provide the INS with requested information relevant to his lawful status in this country, just as he has ignored its orders to surrender for deportation. In almost all circumstances petitioner's pattern of neglect and noncompliance should preclude any last minute effort to invoke the discretionary powers of the INS.

And yet it is a man's life that may be the price of our decision today. Where consequence is at its apex, discretion must be correspondingly narrowed. Petitioner claims that he has information to present to the BIA in support of his pending motion to reopen that has not been previously disclosed—information that supports his contention that if he is deported to Iran he will be summarily executed. By denying petitioner's request for a stay of deportation, the District Director deprived petitioner of the opportunity to have the BIA even consider his motion to reopen.[3] We hold that this was an abuse of discretion.

We cannot condone petitioner's methods of staving off deportation. But we also cannot let the rigors of administrative procedure reshape our ideas about life and death. We will stay the deportation of petitioner pending resolution of his present motion to reopen.

---

**1.** There is no affidavit from Mr. Scott which confirms that these statements were made. At oral argument on June 27, 1984, counsel for petitioner conceded that petitioner had made these remarks, but argued that the District Director took them out of context. Petitioner's counsel contended that they were the product of desperation and bravado, and not the reflection of an actual desire to be deported to Iran.

**2.** Respondent contends that we would be without jurisdiction to review the BIA's denial of a

stay of deportation. Although we are inclined to disagree, petitioner has not requested this review, and, as such, we need not decide the issue.

**3.** If the BIA denies petitioner's motion to reopen, petitioner would have the right to appeal this decision to the Third Circuit Court of Appeals. *Dastmalchi v. INS*, 660 F.2d 880 (3d Cir.1981) (citing *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964)).