Milton **LOPEZ–ALEGRIA**, Petitioner,

v.

David N. **ILCHERT**, District Director of the U.S. Immigration and Naturalization Service, Respondent.

No. C–86–0380 RFP.

United States District Court, N.D. California.

Feb. 14, 1986.

Enrique Ramirez, Patrice Perellie, Immigration Project Catholic Social Service, San Francisco, Cal., for petitioner.

Larry Gallagher, Asst. U.S. Atty., San Francisco, Cal., for respondent.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

### INTRODUCTION

Petitioner Milton Lopez-Alegria filed this action on February 9, 1986, under section 106(a)(9) of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a(a)(9). The action seeks a writ of habeas corpus to restrain the District Director of the Immigration and Naturalization Service ("INS") from deporting petitioner to El Salvador. Petitioner seeks the stay pending the Board of Immigration Appeals' ("BIA") decision on his appeal from an immigration judge's denial of his motion to reopen deportation proceedings. The court grants petitioner's request.

### FACTS

The INS arrested petitioner, who had entered this country without inspection in 1980, on March 10, 1982. Petitioner appeared before an immigration judge on May 24, 1982, on an Order to Show Cause why he should not be deported. At that hearing, petitioner was represented by Sister Margaret Phelan, a legal case worker for Catholic Social Services. Sister Phelan is not a lawyer. Petitioner's representative admitted his deportability and designated El Salvador as the country of deportation. She stated that petitioner would go to El

Salvador only if he could not obtain a visa from any other country. When asked at the hearing if he had ever been convicted of a crime, petitioner replied that he had not, failing to mention a conviction for a misdemeanor petty theft. The immigration judge gave petitioner until July 24, 1982, to depart.

Petitioner failed to depart on July 24, 1982. The INS mailed petitioner a Final Order of Deportation on January 25, 1983, ordering petitioner to report for deportation on February 15, 1983. Petitioner did not report for deportation; he presently claims that he never received this order. The record is ambiguous on this point because it does not show that petitioner signed the certified mail receipt for the order.

The INS apprehended petitioner at his Oakland home on January 16, 1986. On that date, petitioner applied for a stay of deportation with the District Director, and filed a motion to reopen deportation proceedings and for a stay of deportation with the Immigration Court in San Francisco. On January 17, 1986, the immigration judge granted a stay of deportation pending a decision on petitioner's motion to reopen.

Petitioner sought reopening of his deportation proceeding so that he could apply for asylum or temporary withholding of deportation. The declaration in support of his motion states that petitioner did not file for asylum in 1982 because he feared that the INS would forward information on his application to the Salvadorean authorities. The declaration adds facts concerning petitioner's fear of returning to El Salvador. For example, petitioner is the son-in-law of the deceased former commander of the revolutionary forces in El Salvador. Petitioner had also been married to the commander's daughter, who the Salvadorean police had killed during a demonstration at the Venezuelan Embassy. Petitioner's declaration adds that the National Police have charged him with subversive activities and once kidnapped him. The motion to reopen adds that petitioner is currently married to

a lawful, permanent resident of the United States, and that they have a child who was born in this country.

The record also includes a report by a special agent of the INS, containing "information from a confidential informant." According to this unspecified informant, petitioner was involved in terrorist activities in El Salvador, kidnapped and executed the Minister of Education, and is a fanatic Marxist who carried a 9 milimeter pistol and cyanide capsule. The informant adds that if the United States attempted to deport petitioner, petitioner would hijack the plane to Cuba. Petitioner disputes these allegations, but states that they support his claim that the El Salvadorean authorities view him as a dangerous revolutionary.

On January 26, 1986, while the immigration judge's stay of deportation was still in effect, the Acting District Director of the INS denied petitioner's separate application for a stay of deportation. The INS moved petitioner from the Oakland City Jail on January 27, taking him to San Francisco Airport for deportation. The INS did not notify petitioner's counsel of record of this move. After petitioner's representative discussed this matter with an Assistant District Director, the INS stopped the deportation and returned petitioner from Los Angeles to San Francisco.

On February 4, 1986, the immigration judge denied petitioner's motion to reopen and vacated the stay of deportation. The brief denial states that petitioner did not present "new facts of a material nature which could not have been presented or discovered at his former [1982] deportation hearing." Certified Administrative Record at 19. Petitioner, whose deportation was scheduled for February 10, immediately filed an appeal to the BIA, and made a request, by telephone, for a stay. The BIA denied the request for a stay on February 5.

On February 5, Marta Palacios contacted petitioner. Palacios, petitioner's cousin, offered an affidavit that contained information of recent events in El Salvador involving petitioner's family. The affidavit

states that Palacios conversed with petitioner's mother in approximately June 1985. During the phone conversation, petitioner's mother stated that she and two of petitioner's brothers had been arrested within the previous year and a half. Both brothers had been beaten and the authorities never filed formal charges against any of the three.

Based on this new information, petitioner withdrew his appeal to the BIA and filed a new motion to reopen. Petitioner's motion to reopen also containted a request for a stay. Petitioner supplemented the new motion to reopen with additional facts concerning his fear of persecution. Cert.Admin.Rec. at 20–22. According to this supplemental declaration, petitioner had associated with leaders of the opposition in El Salvador. The declaration also provides details of the National Police's torture of petitioner when they kidnapped him. Petitioner adds that Roberto D'Aubisson specifically named him on a list of subversives, many of whom were later killed.

On February 6, 1986, at 4:20 Pacific Time, the immigration judge denied petitioner's renewed motion to reopen. The decision states that "there is no indication that [petitioner] would be singled out for persecution." Cert.Admin.Rec. at 1. In addition, "in view of [petitioner's] past statements and conduct, his present evidence and claim cannot be believed." *Id.*

Petitioner sought relief in this court on February 9 because he could not contact the BIA until after the deportation order would take effect the following morning. This court temporarily stayed the deportation order on February 9, pending further court order at the February 12 hearing. During that hearing, petitioner presented additional affidavits in support of his claim. The affidavit of Mario Alberto Hernandez, for example, states that members of petitioner's family had been beaten and tortured "in order to force from them the whereabouts of [petitioner]." Petitioner also represented that the BIA stated they would not consider any requests for a stay while this court retained jurisdiction over

this matter. At the conclusion of the February 12 hearing, the court continued the stay through February 18.

## DISCUSSION

The Immigration and Nationality Act provides for direct and exclusive review by the courts of appeals of "all final orders of deportation ... made against aliens ... pursuant to administrative proceedings under section 1252(b)." 8 U.S.C. § 1105a(a). A denial of a stay of deportation is not a final order of deportation and thus not directly appealable to the court of appeals. *Kwok v. INS*, 392 U.S. 206, 215–17, 88 S.Ct. 1970, 1975–77, 20 L.Ed.2d 1037 (1968). Therefore, this habeas corpus proceeding is the proper method for raising the denial of discretionary relief, such as the denial of a stay. *See, e.g., Maldonado de Vasquez v. Ilchert*, 614 F.Supp. 538, 539 (N.D.Cal.1985). *See also* 8 U.S.C. § 1105a(a)(9) ("any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.").

Under the regulations, an alien may apply to the district director, the immigration judge, the BIA, or the Attorney General for a stay of deportation. *See, e.g., Bothyo v. Moyer*, 772 F.2d 353, 356 (7th Cir.1985) (citing regulations). For example, the filing of a motion to reopen, as in this case, does not automatically stay deportation. 8 C.F.R. §§ 242.22, 3.8(a). In all circumstances, a stay of deportation is a matter of grace, not of right. *See, e.g., id.*

The execution of a deportation order shall continue despite the filing of a motion to reopen unless the immigration judge hearing the motion to reopen or the BIA specifically grants a stay of deportation. Once the alien is deported, his appeal to the BIA from the decision of an immigration judge is considered withdrawn. 8 C.F.R. § 3.4. Of course, deportation, itself, even with an eventual right of appeal, can cause irreparable harm.

District court review of a discretionary denial of a stay is narrow. The

scope of review is limited to determining whether the immigration judge has abused his discretion. ·*See, e.g., Siu Fung Luk v. Rosenberg,* 409 F.2d 555, 559 (9th Cir.), *cert. dismissed,* 396 U.S. 801, 89 S.Ct. 2151, 24 L.Ed.2d 38 (1969). The immigration judge, though, must specify the reasons for his denial of discretionary relief. 8 C.F.R. §§ 243.4, 103.3; *see also Wang v. INS,* 622 F.2d 1341, 1349 (9th Cir.1980) (to review decision adequately, Board must specifiy its reasons).

▮ Therefore, the question in this matter, as stated by the government at the February 12 hearing, is whether the immigration judge abused his discretion in denying petitioner a stay to appeal to the BIA the judge's denial of his motion to reopen. Under the circumstances of this case, the court finds an abuse of discretion.

The immigration judge in both of his written denials did not fully address petitioner's grounds for relief. Both denials of the motions to reopen relied heavily on the fact that petitioner could have presented his ·evidence at the 1982 hearing. However, the judge did not address petitioner's two explanations for not presenting the evidence at that time: First, he feared that the INS proceeding would not be confidential. Second, and more importantly, petitioner claims that his legal representative at the 1982 hearing, who was not a lawyer, did not inform him that an immigration judge hearing a later motion to reopen would not consider any evidence in suppport of an asylum claim that petitioner could have presented at the earlier hearing. 8 C.F.R. § 242.22. Indeed, the only reference by a member of the INS to petitioner's representation occurs in the Acting District Director's denial of a stay on January 26, 1986. Cert.Admin.Rec. at 71. That denial simply states that "[petitioner] has been represented by counsel since the initiation of deportation proceedings." In addition, the immigration judge's two denials do not mention petitioner's claim that his wife, who is a lawful permanent resident, and their American-born child, would suffer hardship if petitioner were deported.

The February 6 denial contains additional problems. Petitioner's second motion to reopen requested a stay of deportation, Cert.Admin.Rec. at 14, yet the judge's decision did not explicitly address this request, referring only to his motion to reopen. Assumedly, the same factors that motivated the judge to deny the second motion to reopen, motivated him to deny the renewed request for a stay, though the court cannot conclusively determine this from the record.

In addition, the February 6 denial rejects petitioner's new evidence of persecution in conclusory form. The decision states that "in view of [petitioner's] past statements and conduct, his present evidence cannot be believed." The Ninth Circuit has recently reasserted that the INS must accept as true the factual statements contained in an affidavit unless they are inherently incredible. *Hernandez-Ortiz v. INS,* 777 F.2d 509, 514 (9th Cir.1985). The only evidence in the record that could reflect adversely on petitioner's credibility is that he did not tell the hearing officer at the 1982 proceeding that he had been convicted of petty theft. This one statement should not render his evidence in support of his asylum request "inherently incredible." In addition, Palacios' affidavit was the new evidence petitioner submitted in support of his renewed motion; the immigration judge provides no reasons for finding her declaration "inherently incredible." Her declaration cites instances of violence by the Salvadorean authorities against petitioner's family; the Ninth Circuit has specifically noted the relevance of this type of evidence in a motion to reopen to apply for asylum. *Id.* at 515.

Finally, the most important reason for the court's finding is that petitioner's life is at stake. "Where consequence is at its apex, discretion must be correspondingly narrowed." *Bazrafshan v. Pomeroy,* 587 F.Supp. 498, 501 (D.N.J.1984) (stay of deportation ordered pending resolution of motion to reopen). Petitioner's and Palacios' declarations indicate the extreme dangers petitioner may face upon return to El Sal-

vador. Additional evidence supplied at the hearing states that members of petitioner's family in El Salvador have been tortured by the goverment in an effort to find petitioner's whereabouts.

The Immigration authorities have not reviewed in any detail the substance of petitioner's claims. The decision on the first petition to reopen denied the motion specifically because petitioner *could* have advanced this evidence at the 1982 hearing; the February 6 decision rejected petitioner's claims in conclusory form, disputing its credibility. Now, petitioner cannot await the BIA's decision on his appeal of the denial of the motion to reopen since he will be deported, and his appeal considered withdrawn, unless this court acts.

In *Bazrafshan,* the court stated that it could not "condone petitioner's methods of staving off deportation." 587 F.Supp. at 501. Similarly, petitioner in this case should not have waited until his arrest and imminent deportation to raise his asylum request. "But we cannot let the rigors of administrative procedure reshape our ideas about life and death." *Id.* Accordingly, the court will stay petitioner's deportation pending resolution by the BIA of his motion to reopen.

IT IS SO ORDERED.