**Karim SALEH, Plaintiff,**

v.

**Edwin MEESE, et al., Defendants.**

**No. 87 C 402.**

United States District Court,
N.D. Illinois, E.D.

Sept. 15, 1987.

---

Mark A. Anvaripour, Anvaripour and Associates, Chicago, Ill., for plaintiff.

Jack Penca, Linda A. Wawzenski, Asst. U.S. Attys., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Karim Saleh ("Saleh") has filed a petition for a writ of habeas corpus (the "Petition") against Attorney General Edwin Meese and the Immigration and Naturalization Service ("INS") (collectively "Respondents"). Respondents have now filed a motion for summary judgment under Fed.R.Civ.P. ("Rule") 56, primarily asserting this Court lacks subject matter jurisdiction over the Petition (rather than dealing with its merits). For the reasons stated in this memorandum opinion and order, the Petition is indeed dismissed for want of jurisdiction.

### Facts [1]

On December 27, 1977 Saleh was admitted to the United States as a permanent resident alien, and he has remained in this country continuously since that date (Ex. 4). On September 24, 1984 he was convicted in the Circuit Court of Cook County, Illinois of (1) possession of a controlled substance with intent to deliver and (2) bribery, receiving 30 months' probation for those offenses (Exs. 1, 2). Under Immigration and Nationality Act ("Act") § 241(a)(11), 8 U.S.C. § 1251(a)(11),[2] aliens convicted of narcotics offenses are deportable. On August 6, 1985 Respondents instituted deportation proceedings against Saleh under Section 1252(b) (Ex. 4).

Saleh and his attorney attended his March 26, 1986 deportation hearing before an immigration judge. Saleh admitted his deportability under Section 1251(a)(11) but asked for time to file an application for a waiver of deportation under Section 1182(c). He was given until June 2 to file such an application, and his deportation hearing was continued to November 5, 1986 (Ex. 7).

Saleh did not file a Section 1182(c) application by June 2, and he also failed to appear at the November 5 hearing.[3] Because Saleh had already admitted his de-

---

**1.** These facts are derived from the parties' submissions, including the exhibits provided by Respondents. References to the Petition will take the form "¶ —"; references to the exhibits, "Ex. —."

**2.** Act provisions will hereafter be cited "Section —," using Title 8's numbering rather than the internal numbering of the Act itself. Regulations drawn from 8 C.F.R. will be cited "Reg. § —."

**3.** Saleh explains his November 5 absence by the fact he was in state custody on still another criminal charge (P.Mem. at 2; Ex. 12), but he offers no justification for either his failure to file on June 2 or his failure to have notified INS of his inability to attend the November 5 hearing.

portability and had failed to seek a waiver, the immigration judge ordered him deported but reserved Saleh's right to appeal that order to the Board of Immigration Appeals ("BIA") (Exs. 8, 9). Saleh never filed such an appeal from the order of deportation, and on December 18, 1986 the INS issued a warrant of deportation (Ex. 10).

After Saleh was apprehended on that warrant and taken into custody by Respondents, he began the proceedings that are directly relevant to his Petition. On December 23, 1986 he filed (1) a motion to reopen the deportation proceeding with the immigration judge under Reg. § 242.22 so that he could file his Section 1182(c) waiver application (Exs. 17–18), together with (2) a request that the immigration judge stay his deportation (Exs. 19–20). Saleh's request for a stay was denied the next day (Ex. 11), and his motion to reopen was denied January 13, 1987 (Ex. 12).

Saleh immediately appealed the denial of his motion to reopen to BIA and also asked BIA for a stay of his deportation (Reg. § 3.6(b)). His request for a stay was denied January 14, 1987 (Ex. 13), and his appeal of the immigration judge's denial of his motion to reopen is still pending.

Saleh filed his Petition January 15. According to Respondents that filing automatically stayed his deportation (see 2 Gordon & Rosenfield, *Immigration Law and Procedure* §§ 8.7d, 18 (rev. ed. 1987)),[4] and he is now free on bond (Exs. 14–15). Nonetheless he is still technically "held in custody" in the legal sense for habeas corpus purposes (*Burris v. Ryan*, 397 F.2d 553, 555 (7th Cir.1968)).

### Challenge and Response

On its face the Petition attacks only the order of deportation and the immigration judge's denial of Saleh's motion to reopen. Saleh says he is entitled to a waiver of his deportation under Section 1182(c)(¶¶ 4–7). He does not even mention the denial of his motions for a stay of deportation by the immigration judge or BIA (that information came to this Court only through Respondents' exhibits).

Respondents contend this Court has no jurisdiction to entertain the Petition because Section 1105a(a) gives our Court of Appeals exclusive jurisdiction over the issues raised by Saleh's Petition. They are right.

### Procedural Posture

Respondents have labeled their motion as one for summary judgment under Rule 56. As already noted, the major (though not exclusive) thrust of their motion is to challenge this Court's subject matter jurisdiction. Rule 12(b)(1) rather than Rule 56 is the appropriate vehicle for challenging a court's subject matter jurisdiction (see 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1350, at 547 (1969)). Respondents' evidentiary submissions are just as cognizable on a Rule 12(b)(1) motion as they would be for Rule 56 purposes (*id.* at 549–50). Because Respondents' jurisdictional arrow hits the mark, their arguments against the merits of the Petition are moot and need not be addressed (*id.* at 548).

### Section 1105a

■ Section 1105a(a) gives the courts of appeals "sole and exclusive" jurisdiction for:

> the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under Section 1252(b) of this title or comparable provisions of any prior Act, except that—

> \*    \*    \*    \*    \*    \*

> (9) any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.

As the statutory language and structure make clear, the *rule* under Section 1105a(a) vests the courts of appeals with exclusive jurisdiction to review final orders entered during Section 1252(b) deportation proceedings; the Section 1105a(a)(9) habeas juris-

---

4. See Appendix.

888

diction of district courts is a partial *exception* to that rule.[5]

"Final orders" under Section 1105a(a) include "all determinations made during and incident to the administrative proceeding" (*Foti v. INS*, 375 U.S. 217, 229, 84 S.Ct. 306, 314, 11 L.Ed.2d 281 (1963)) and "all matters on which the validity of the final order is contingent" (*INS v. Chadha*, 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983)). If a literal reading were given to the exception in Section 1105a(a)(9), allowing for initial judicial review in district courts via habeas proceedings, it would apply to every alien (such as Saleh) held in custody—even if a "final order" were involved. But because of the congressional purpose that led to the vesting of exclusive jurisdiction in the courts of appeals, controlling case law has supplied a judicial gloss that converts the Section 1105a(a)(9) exception into a narrow one, applicable only to *certain* discretionary determinations under the Act not made during the course of a deportation proceeding (compare *Foti*, 375 U.S. at 227, 84 S.Ct. at 313 with *Cheng Fan Kwok v. INS*, 392 U.S. 206, 216–17, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968); see also *Fleurinor v. INS*, 585 F.2d 129, 135–36 (5th Cir.1978)).

Saleh's Petition does not fit into the narrow opening created by Section 1105a(a)(9). He challenges (1) Respondents' decision to arrest and deport him and (2) their denial of his motion to reopen. Neither of those matters is properly raised in habeas proceedings. Our Court of Appeals is the exclusive forum for any attack on the order of deportation (*Terrado v. Moyer*, 820 F.2d 920, 922 (7th Cir.1987) (per curiam)), including an appeal from the denial of a motion to reopen (*Diaz-Salazar v. INS*, 700 F.2d 1156, 1159 (7th Cir.1983), citing *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964)).[6]

Saleh attempts to escape the overwhelming weight of authority by pointing to *Salehi v. District Director, INS*, 796 F.2d 1286 (10th Cir.1986) and *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. 1982). Saleh argues that because those cases allowed district courts to consider "general" attacks on INS procedures in deportation proceedings, this Court has jurisdiction to consider his Petition. Saleh misconstrues the holdings in *Salehi* and *Haitian Refugee Center* and ignores the actual thrust of his own Petition.

In *Haitian Refugee Center* a plaintiff class of Haitian refugees sought review in a district court of the validity of the expedited procedures being used by INS to process their asylum applications. INS argued the courts of appeals have exclusive jurisdiction over such matters under Section 1105a(a). That argument was rejected (676 F.2d at 1033 (footnote 22 omitted)):

> Notwithstanding any surface appeal to the government's argument, we are convinced that insofar as the first three counts set forth matters alleged to be part of a pattern and practice by immigration officials to violate the constitutional rights of a class of aliens they constitute wrongs which are independently cognizable in the district court under its federal question jurisdiction.

But in the very next sentence and in the following footnote (both of which Saleh ignores) *Haitian Refugee Center* said the courts of appeals *have* exclusive jurisdiction over alleged procedural irregularities in an *individual* deportation hearing when those irregularities would provide a basis for reversing an individual order. Indeed, even as to what the opinion termed "a wholesale, carefully orchestrated, program of constitutional violations" (*id.*) the court went on to say (*id.* at 1033 n. 23):

> We caution that in the latter situation the district court has no authority to review on the merits any ultimate determination by the INS on the issue of deportability or any discretionary relief sought before the immigration judge during the deportation proceeding.

---

**5.** In contrast, final orders of *exclusion* entered under Section 1226 may be reviewed only by habeas corpus proceedings initiated in a district court (Section 1105a(b)).

**6.** This Court expresses no opinion as to the actual availability—or the merits—of any such appeal(s).

In *Salehi* several illegal aliens filed habeas corpus petitions in which they alleged (796 F.2d at 1288):

> [T]hey were denied due process because the INS regulations do not provide for an automatic hearing and a stay of deportation upon the filing of a motion to reopen deportation proceedings based on a claim of refugee status.

Again INS argued the courts of appeals have exclusive jurisdiction over such issues. *Salehi* (relying in part on *Haitian Refugee Center*) rejected that argument because (796 F.2d at 1290):

> Although petitioners' due process claims attack the constitutionality of regulations governing motions to reopen, their claims constitute a general attack upon the regulations and do not involve appeals from denials of motions to reopen or determinations made incident to a motion to reopen.

Saleh does not similarly challenge a "pattern or practice" of unconstitutional conduct by INS, nor does he question any of the regulations controlling motions to reopen or final orders of deportation. Nevertheless he attempts to draw comfort from *Haitian Refugee Center* and *Salehi* by labeling his Petition a "general due process attack" on the immigration judge's conduct.

Such a label cannot change the fact the Petition really disputes the validity of Saleh's deportation order and the immigration judge's denial of his motion to reopen on their merits, and *not* because of any procedural irregularities in those proceedings.[7] Saleh claims Respondents' decisions are arbitrary and an abuse of discretion. Those claims are substantive. They dispute the validity of determinations made during the course of deportation proceedings, an area over which the courts of appeals have exclusive jurisdiction even under the authorities invoked by Saleh (*Haitian Refugee Center*, 676 F.2d at 1033 & n. 23).

### Jurisdiction Over an Amended Petition

■ This Court thus has no jurisdiction over the Petition in its present form. But that is not the end of the story. Respondents' evidentiary submissions show Saleh *might* be able to amend his Petition to bring it within the exception created by Section 1105a(a)(9). Saleh did ask for stays of his deportation, pending a decision on his motion to reopen, from both the immigration judge and BIA. Both those requests were denied. Such denials of discretionary relief *may* be reviewable by this Court under Section 1105a(a)(9), though Saleh's present pleading leaves him without a remedy here.[8]

In this type of situation—when the literal terms of a party's pleading fail to bring a claim within this Court's subject matter jurisdiction, but other evidence shows the jurisdictional defect might be cured by an amended pleading—this Court can either (1) deny the motion challenging jurisdiction, directing the party to amend, or (2) dismiss with leave to amend by a date certain (see 5 Wright & Miller § 1350, at 553; and see 28 U.S.C. § 1653). Either of those options forces a deferral of final resolution of the jurisdictional issues until after the pleadings are amended.

In that respect, though, a logical distinction exists between contested issues of fact and law. Such delay is proper and indeed necessary when the jurisdictional dispute is factual.[9] But here all the facts are undis-

---

7. Even were Saleh disputing purely procedural irregularities in his deportation proceeding, that attack on the validity of an individual order would still be within the exclusive jurisdiction of the courts of appeals (*Haitian Refugee Center*, 676 F.2d at 1033 n. 23).

8. This Court has construed the allegations in Saleh's Petition liberally (see 5 Wright & Miller § 1350, at 551), but there is simply no way to read the Petition as challenging the denials of his requests for a stay. Although Saleh's Mem. 6 (and perhaps logic as well) indicate that should be the thrust of his attack, this Court can construe only what the Petition actually alleges, not what it should have. Those present allegations do not even suggest Saleh applied for a stay of his deportation (as this Court has since learned from Respondents' exhibits), much less revealing the outcome of such applications.

9. In that situation, any decision would necessarily be dependent upon what facts a plaintiff or petitioner could allege in good faith (and could support with evidence if challenged) in the amended pleading.

puted, so jurisdiction over any amended petition seeking review of the denials of Saleh's requests for a stay would be purely a matter of law. Accordingly this Court can and will now examine whether jurisdiction would exist over any such amended petition.

### Stays of Deportation and Section 1105a

Saleh sought stays of deportation from both the immigration judge and the BIA pending their decisions on his motion to reopen. That motion did not itself serve to stay his deportation (Reg. §§ 3.8(a), 242.22; see also *Bothyo v. Moyer*, 772 F.2d 353, 356 & n. 2 (7th Cir.1985)), and both stay requests were denied.[10] Saleh could also have sought a stay of deportation from the INS District Director at any time, even before he filed his motion to reopen (Reg. § 243.4; *Bothyo*, 772 F.2d at 356).[11] For reasons known only to Saleh and his attorney, he has never done so.

In any case, this Court—on the assumption Saleh's Petition might be amended to question the denials of his requests for a stay of deportation by the immigration judge and BIA—must decide whether that issue is within the exclusive jurisdiction of the courts of appeals under Section 1105a(a). Surprisingly enough, that question is one that has never been examined in any depth by a federal court.

Three Supreme Court decisions have addressed the scope of Section 1105a(a). Those decisions necessarily set the stage for further analysis.

*Foti v. INS*, 375 U.S. 217, 228–31, 84 S.Ct. 306, 313–14, 11 L.Ed.2d 281 (1963) held an immigration judge's denial of a suspension of deportation under what was then Section 1254(a)(5) was within the exclusive jurisdiction of the courts of appeals because that decision was rendered during a proceeding under Section 1252(b). *Foti, id.* at 229 taught the scope of Section 1105a(a) is not limited to the actual adjudication of deportability:

> Also, it seems rather clear that all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals ... are likewise included within the ambit of the exclusive jurisdiction of the Courts of Appeals under [Section 1105a(a)].

*Foti*, however, did not attempt to establish that statute's outer contours.

*Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam) decided a question expressly left open by *Foti*, 375 U.S. at 231, 84 S.Ct. at 314: It summarily reversed a court of appeals decision that had found the denial of a motion to reopen outside the scope of Section 1105a(a). *Giova* thus further expanded the scope of the courts of appeals' exclusive jurisdiction, but its terse single-sentence reversal also gave the Court no opportunity to define the ultimate reach of that exclusive jurisdiction.

Then *Cheng Fan Kwok*, 392 U.S. at 212–17, 88 S.Ct. at 1974–76 came along and rejected any all-encompassing scope for

---

**10.** Saleh had to present his motion to reopen (and his accompanying request for a stay) initially to the immigration judge because Saleh had never appealed his original order of deportation to BIA (Reg. § 242.22). INS regulations gave the immigration judge authority to stay Saleh's deportation pending his decision *and* pending any appeal (*id.*). Saleh's later request for a stay from BIA was not an appeal from the immigration judge's denial of his initial request. BIA has independent and concurrent authority to stay deportation pending its review of the denial of a motion to reopen (Reg. § 3.6(b)). Thus the immigration judge's denial of the motion to reopen did not moot his denial of the stay. That decision remains a live issue while Saleh's appeal is before the BIA.

**11.** District directors have independent and concurrent jurisdiction, along with immigration judges and BIA (see n. 10), to grant stays of deportation pending the resolution of motions to reopen. None of the three administrative sources for stays in any way "reviews" the decision(s) of the others having that authority. All three grant stays independently as a matter of grace, not of right (*Lopez-Alegria v. Ilchert*, 632 F.Supp. 932, 935 (N.D.Cal.1986)). There is one difference among the three: Unlike immigration judges and BIA, district directors are not limited to granting stays pending motions to reopen (Reg. § 243.4).

Section 1105a(a). It held a district director's denial of a stay of deportation is not within the exclusive jurisdiction of the courts of appeals under that statute, but is instead reviewable only in habeas proceedings as provided by Section 1105a(a)(9) (see, e.g., *Bueno v. INS*, 578 F.Supp. 22 (N.D.Ill. 1983)). *Cheng Fan Kwok*, 392 U.S. at 216, 88 S.Ct. at 1976 put its rule succinctly:

We hold that the judicial review provisions of [Section 1105a(a)] embrace only those determinations made during a proceeding conducted under [Section 1252(b)], including those determinations made incident to a motion to reopen such proceedings.

*Foti* and *Giova* were distinguished (*id.* at 216–17, 88 S.Ct. at 1976 on the basis that the administrative determinations in those earlier cases had been made "as an integral part" of Section 1252(b) proceedings by the officials who had themselves conducted those proceedings. *Cheng Fan Kwok*, on the other hand, involved an independent determination under a separate regulation by the district director, an official unconnected to the actual deportation proceedings.

Since *Cheng Fan Kwok* any further fine tuning as to the exact scope of Section 1105a(a) has been left to the lower federal courts. On that score, *Reyes v. INS*, 571 F.2d 505 (9th Cir.1978) has made the most significant contribution for present purposes. Plaintiffs in *Reyes* sought court of appeals review under Section 1105a(a) of BIA's denial of their request for a stay of deportation, made while plaintiffs' motion to reopen was still pending before BIA.

*Reyes, id.* at 506 held the Court of Appeals lacked jurisdiction because BIA's denial of a stay during the pendency of a motion to reopen is not a "final order" within the meaning of the statute.

That holding was dispositive of the only issue before the *Reyes* court. Nevertheless the opinion went on to discuss when denial of a stay by BIA *would* be directly reviewable by a court of appeals. Because such a denial is ancillary to the question of deportability (*Foti*, 375 U.S. at 227, 84 S.Ct. at 313 says just that), *Reyes*, 571 F.2d at 507 reasoned (specifically citing to *Cheng Fan Kwok*, 392 U.S. at 216, 88 S.Ct. at 1976 and *Giova*):

The denial of the stay pending consideration of the motion to reopen would be reviewable on a petition to review a denial of the motion to reopen, as a determination made during and incident to a section [1252(b)] proceeding.[12]

Because courts of appeals have exclusive jurisdiction under Section 1105a(a), the necessary though unstated corollary to that last-quoted statement is the *Cheng Fan Kwok* proposition that "determinations made incident to a motion to reopen [Section 1252(b)] proceedings"—in this instance the rulings on motions to stay while motions to reopen are under consideration—are also within that exclusive jurisdiction. And that in turn means denials of a stay by immigration judges or BIA while a motion to reopen is pending are *not* reviewable by a district court in habeas corpus under Section 1105a(a)(9)—even though review by a court of appeals has not yet become possible under *Reyes*.[13] Such dis-

---

**12.** [Footnote by this Court] That was a specific reference to review under Section 1105a(a)'s exclusive jurisdiction. *Cheng Fan Kwok*, 392 U.S. at 216 n. 16, 88 S.Ct. at 1976 n. 16 did suggest (but did not decide) that a court of appeals might have pendent jurisdiction, as opposed to exclusive jurisdiction, over "denials of discretionary relief" when it already had before it a related petition for review from a Section 1252(b) proceeding. That dictum cannot be read as implying that all "denials of discretionary relief" under the Act are *outside* the court of appeals' exclusive jurisdiction under Section 1105a(a). Read in context, the Court's statement plainly refers only to "denials of discretionary relief" not made during a Section

1252(b) proceeding (such as the denial of a stay by the district director) and therefore not within the court of appeals' exclusive jurisdiction. Any broader reading would allow an ambiguous footnote dictum to override the reasoning and express holding in the text (*cf. Reyes*, 571 F.2d at 507 n. 1).

**13.** *Reyes* dealt with denial of a stay by BIA, while this Court must address denials of stays by the immigration judge as well as BIA (see n. 10). Both those denials were independent decisions rendered during Section 1252(b) proceedings, and there is no reason to treat the immigration judge's denial any differently than *Reyes* treated BIA's denial. Both would be reviewable

cretionary denials of interim relief during Section 1252(b) proceedings are reviewable only together with the later determination of the deportability issue (that is, denial of the motion to reopen).[14] As *Foti*, 375 U.S. at 227, 84 S.Ct. at 313 put it succinctly:

> Review of the denial of discretionary relief is ancillary to the deportability issue, and both determinations should therefore be made by the same court at the same time.

*Reyes'* actual holding—that BIA's denial of a stay is not a *final* order under Section 1105a(a)—has been followed by several other courts of appeals, including our own in *Diaz-Salazar*, 700 F.2d at 1159. *Diaz-Salazar*, however, went on to say the government had conceded at oral argument "that the district court's denial of Diaz-Salazar's petition for a writ of habeas corpus on jurisdictional grounds was probably incorrect." That Delphic statement has been matched by an order from the Ninth Circuit (*Kemper v. INS*, 705 F.2d 1150 (9th Cir. 1983)) that, while adhering to the *Reyes* and *Diaz-Salazar* non-reviewability holdings as to the denial of a stay motion pending decision on a motion to reopen, added cryptically:

> Petitioner may seek appropriate relief in district court. See 8 U.S.C. §§ 1105a(a)(9); 1329.

This Court has located only one reported case (*Lopez-Alegria v. Ilchert*, 632 F.Supp. 932 (N.D.Cal.1986)) in which a district court did engage in habeas corpus review of an immigration judge's denial of a stay of deportation.[15] Unfortunately *Lopez-Alegria, id.* at 935 failed to recognize the jurisdictional issue now before this Court: It merely cited *Cheng Fan Kwok* as the predicate for review. This Court finds such reliance misplaced, for analytical reasons that require a further rehearsal of the already-described Supreme Court decisions.

*Cheng Fan Kwok* indeed held the denial of a stay of deportation *by a district director* is not directly appealable to a court of appeals under Section 1105a(a). And that nonappealability was indeed indicated by the fact that such denial was not a "final order"—the stated condition of a Section 1105a(a) appeal (392 U.S. at 212, 88 S.Ct. at 1974). But at the same time *Cheng Fan Kwok, id.* at 216–17, 88 S.Ct. at 1976 reaffirmed the *Foti* principle that Section 1105a(a) appeals also embrace ancillary determinations made during Section 1252(b) proceedings (*id.* at 216, 88 S.Ct. at 1976) (emphasis added):

> We hold that the judicial review provisions of [Section 1105a(a) ] embrace only those determinations made during a proceeding conducted under [Section 1252(b) ], *including those determinations made incident to a motion to reopen such proceedings.*

By definition that could never encompass a district director's stay of a deportation ruling, for such a stay is wholly independent of Section 1252(b) proceedings and is provided for in regulations wholly separate and apart from those governing such proceedings (see Reg. § 243.4).

---

by this Court if it had jurisdiction over such discretionary decisions rendered during Section 1252(b) proceedings. Of course, both denials of essentially the same request are based on the same facts and are subject to the same standard of review. Hence if one denial is not an abuse of discretion neither is the other, and if one denial were reversed the other would be mooted.

**14.** *Reyes'* dictum failed to address another issue that would be equally relevant to the availability of judicial review for such interlocutory decisions: mootness. Because stays by immigration judges and BIA operate only pending BIA's decision on the motion to reopen, any denial of such a stay would generally become a moot issue once BIA denied that motion, so long as

the alien is not deported while the motion is pending (see *Reid v. INS*, 766 F.2d 113, 114 (3d Cir.1985)). That issue could, however, be revived if on appeal the denial of the motion to reopen were overturned and the case were remanded to BIA for further consideration. Then a court of appeals could review denial of the stay, for (1) the motion to reopen would again be before BIA and (2) absent a stay the alien would again be subject to immediate deportation. All this discussion of mootness is beside the mark here, where Saleh's motion to reopen remains pending before BIA.

**15.** *Bazrafshan v. Pomeroy*, 587 F.Supp. 498, 501 n. 2 (D.N.J.1984) suggested such review could be available but had not been requested by the petitioner there.

By sharp contrast, a stay by an immigration judge or BIA—also a matter of discretionary relief (see *Foti*, 375 U.S. at 218, 84 S.Ct. at 308)—is authorized *only* while a motion to reopen is pending (see Reg. §§ 3.6(b), 242.22). And the denial of such a stay is an ancillary determination made during Section 1252(b) proceedings, which *Foti*, 375 U.S. at 227, 84 S.Ct. at 313 teaches (and *Cheng Fan Kwok*, 392 U.S. at 216, 88 S.Ct. at 1976 reaffirms) are included within the scope of Section 1105a(a). What *Foti*, 375 U.S. at 227, 84 S.Ct. at 313 says is that Congress intended such ancillary determinations to be reviewable along with the final deportability order "by the same court at the same time."

What all this comes down to is that the denials of stays of Saleh's deportation are not *now* reviewable by our Court of Appeals because they are not "final orders" (*Diaz-Salazar*, 700 F.2d at 1159), but will become *exclusively* reviewable by our Court of Appeals in conjunction with BIA's final order on Saleh's motion to reopen (*Foti*, 375 U.S. at 227, 84 S.Ct. at 313). This Court's assumption of habeas jurisdiction, then, would have to be shoehorned into the interval between BIA's denial of the stay of deportation and BIA's decision on the motion to reopen. Were that permitted, it would completely swallow up the "by the same court at the same time" principle announced in *Foti:* Every alien who, while under a deportation order, was turned down for a stay by BIA could tender that issue to a district court via habeas petition while BIA had his or her motion to reopen under consideration. This Court's assumption of such jurisdic-tion would subvert the principle pronounced in *Foti* (and really reconfirmed in *Cheng Fan Kwok*, 392 U.S. at 216, 88 S.Ct. at 1976). That is effectively the message of *Reyes*, 571 F.2d at 507 & n. 1, and it would be frustrated by following the unexamined dictum in *Diaz-Salazar*, 700 F.2d at 1159.[16]

Although it is never wise to place too heavy reliance on implications from dissenting opinions, Justice White's dissent in *Cheng Fan Kwok*, 392 U.S. at 218, 88 S.Ct. at 1977 is worth noting. There he argued that because the denial of a stay by an *immigration judge* would be within a court of appeals' exclusive jurisdiction, the denial of a stay by the *district director* should receive the same treatment. Rather than disagreeing with Justice White's initial premise, the Court majority (*id.* at 212 n. 11, 88 S.Ct. at 1974 n. 11) rejected his conclusion because a denial by the district director, unlike similar action by an immigration judge, was not perceived as made "pursuant to" a Section 1252(b) proceeding. It is at least a permissible inference that the felt need to make such a distinction, treated as the relevant one by the Court majority, supports the conclusion reached here.

Nor should such a distinction, for judicial review purposes, between similar INS-related decisions made by different officials under different grants of authority be viewed as either hypertechnical or without precedent. For example, in *Carvajal-Munoz v. INS*, 743 F.2d 562, 566–67 (7th Cir. 1984) our Court of Appeals held that while asylum decisions by a district director under Section 1158(a) were reviewable in a district court under Section 1105a(a)(9),

---

**16.** Although *Diaz-Salazar* rejected the petition to review BIA's denial of a stay, the Court of Appeals also had before it a separate petition to review BIA's later denial of a motion to reopen. Those petitions were consolidated for review, even though the first petition had been filed before BIA rendered its decision on the motion to reopen (700 F.2d at 1158–59). *Cheng Fan Kwok* would have permitted the Court of Appeals to review the denial of the stay as a determination incident to a motion to reopen *if* that denial had also been challenged in the second petition. Because the denial was instead challenged only in the first petition (when it was still a nonfinal order), *Diaz-Salazar, id.* at 1159 held the Court of Appeals had no jurisdiction to review it. That disposition is certainly correct, for the initial petition had to stand on its own "jurisdictional feet." This opinion differs only with *Diaz-Salazar's* later acceptance (*id.*) of the government's oral concession as to the habeas reviewability of such a denial in a district court. This Court is well aware of its jurisprudential obligation to follow our Court of Appeals' mandates (for which purpose it needs no such reminders as *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031, 1044 n. 14 (7th Cir.1987)). But that obligation does not extend to unexamined offhand dicta.

894

comparable asylum decisions by immigration judges under Section 1253(h) were within the Section 1105a(a) grant of exclusive jurisdiction and must be directly reviewed by the courts of appeals. That distinction too was based on the fact that such decisions by immigration judges were made during Section 1252(b) proceedings, while such decisions by district directors were part of a separate procedure provided for by Congress.

*Foti,* 375 U.S. at 226, 84 S.Ct. at 312 recognized the congressional purpose behind Section 1105a(a):

> to expedite the deportation of undesirable aliens by preventing successive dilatory appeals to various federal courts....

That purpose is achieved by requiring simultaneous review of both (1) final orders of deportation and (2) all ancillary determinations made during the Section 1252(b) proceedings that produce such final orders (*id.* at 227, 84 S.Ct. at 313).[17] *Cheng Fan Kwok* wisely refused to extend Section 1105a(a) to discretionary relief available outside Section 1252(b) proceedings. Such relief is often available after such proceedings have been concluded, and it often involves different issues as well as always involving different INS officials.[18] It would thus be impractical and sometimes impossible to combine all such determinations into a single appeal. Hence habeas

corpus review under Section 1105a(a)(9) is made available for such separate discretionary determinations. As noted in *Cheng Fan Kwok,* 392 U.S. at 217, 88 S.Ct. at 1976 and *Foti,* 375 U.S. at 229–30, 84 S.Ct. at 313–14, INS itself can—if it wishes—avoid any resulting inefficiency by changing its rules so that "the review of denials of discretionary relief will [not] be conducted separately from the review of an order of deportation involving the same alien" (*Cheng Fan Kwok,* 392 U.S. at 217, 88 S.Ct. at 1976).[19]

This Court is not of course insensitive to the potential hardship to someone in Saleh's position that this opinion's jurisdictional ruling might be perceived as creating. But before the discussion here turns to demonstrating why that is really a non-problem, it is worth recapitulating just how and why this Court's current ruling serves the congressional purposes underlying Section 1105a(a), as well as being faithful to the Supreme Court decisions interpreting and applying that statute. Though perhaps repetitive, such a review is warranted by the complex nature of the proceedings involved.

■ Motions to reopen are a regulatory creation of INS and, as such, are among the final orders within the scope of Section 1105a(a). Such motions serve the laudable purpose of allowing an immigration judge

17. *Foti's* concern with successive dilatory appeals has been echoed in several court of appeals' decisions, following *Reyes* or *Diaz-Salazar,* that refuse to review BIA's denial of a stay (see, e.g., *Bonilla v. INS,* 711 F.2d 43, 44 (5th Cir.1983) (per curiam)). If such denials were held reviewable in habeas proceedings, the inevitable result would be the creation of additional appeals, because each denial could be the subject of a separate petition. In turn each such petition would potentially cause additional delays in deporting aliens (see Appendix).

18. Although any decision by the district director on a request by Saleh for a stay would have presented the same question as that before the immigration judge and BIA, that is not always the case. District directors are not limited to granting stays while motions to reopen are pending. Thus requests under Reg. § 243.4 can involve issues totally unrelated to the Section 1252(b) proceeding. When a request does involve the identical issues, however, a court of

appeals might perhaps be able to review the district director's denial of a stay under its pendent jurisdiction as an issue related to its review of the motion to reopen (see *Cheng Fan Kwok,* 392 U.S. at 216 n. 16, 84 S.Ct. at 1976 n. 16; see also n. 12).

19. That opportunity for INS-authored change, specifically sanctioned by the Supreme Court, would be blocked by the government's oral concession in *Diaz-Salazar.* For example, if INS decided to eliminate habeas review under *Cheng Fan Kwok,* it could change its regulations so that only BIA or immigration judges have the authority to stay an order of deportation, and only during Section 1252(b) proceedings. But the habeas-permissive approach to such denials of stays suggested in *Diaz-Salazar* (based on the government's concession) would prevent INS from doing that, because the government's concession produced the *Diaz-Salazar* dictum that such denials of stays were also subject to habeas review.

to reconsider a final order of deportation if previously-unavailable relevant evidence is presented (see Reg. § 242.22). Although any motion to reopen must by definition be decided after a Section 1252(b) proceeding has resulted in a final order of deportation, it is provided for by the regulations governing such proceedings and is therefore covered by Section 1105a(a) (*Giova,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90). That of course means a Section 1252(b) proceeding might produce two separate petitions in the court of appeals: one for review of the final order of deportation and a second for review of a denial of a motion to reopen. To prevent further proliferation, that second petition must include (*Cheng Fan Kwok,* 392 U.S. at 216, 88 S.Ct. at 1976):

> those determinations made incident to a motion to reopen such proceedings.

Among those "incidental" determinations are the denial of a stay by the immigration judge or BIA. In this Court's view, such determinations are within the exclusive jurisdiction of the courts of appeals in all events, which means they are reviewable only in conjunction with the corresponding final order: the denial of the motion to reopen.

So much for the path prescribed for appealing the denials of stays by immigration judges and BIA. Were they the only avenue available for relief, there is no blinking the difficulty a petitioner such as Saleh could face. Motions to reopen do not automatically stay the execution of an order of deportation (see *Bothyo,* 772 F.2d at 356 & n. 2). That is why immigration judges and BIA have been given the discretionary authority to stay orders of deportation while considering a motion to reopen. If either arbitrarily refuses to exercise that authority in a decision considered nonreviewable because nonfinal, a petitioner with a meritorious motion to reopen could be deported while the motion to reopen is pending.

Saleh no doubt would say that is exactly his position now. And just such considerations may well have prompted the Court of Appeals' inquiry, and the government's concession, during oral argument in *Diaz-Salazar.* Though the law is not always fair (nor must it always be so), fairness would seem to call for giving a petitioner in Saleh's position some opportunity for judicial relief from allegedly arbitrary or abusive actions by INS officials, especially when irreparable harm could result.[20]

But Saleh is not without a remedy—one explicitly marked out for him by INS. As already noted, in addition to the limited authority accorded immigration judges and BIA, INS regulations give a district director considerably broader authority (Reg. § 243.4):

> In his discretion, [to] grant a stay of deportation for such time and under such conditions as he may deem appropriate.

Saleh could have gone initially—and in fact Reg. § 243.4 strongly suggests he was *required* to go initially—to INS' Chicago District Director with his request for a stay of deportation.[21] Indeed the regulations even provide for such a request to the district director to be made in conjunction with a motion to reopen (and a request for a stay) from the immigration judge, and at no additional cost (see Reg. § 103.7(b); 1A Gordon & Rosenfield § 5.16a, at 5–174). Such a request would not have prevented Saleh from also requesting stays from the immigration judge and BIA.

---

**20.** That could indeed flow from an alien's deportation while a motion to reopen is pending. Although the Ninth Circuit allows some challenges to a deportation order to continue even after actual deportation (see, e.g., *Estrada-Rosales v. INS,* 645 F.2d 819, 820 (9th Cir.1981)), our Court of Appeals has not yet addressed that issue (*Terrado,* 820 F.2d at 922). If Saleh's deportation were held to moot the issues raised in his Petition, that could fairly be perceived as irreparable harm.

**21.** *Reid,* 766 F.2d at 116–17 n. 9 also suggested the All Writs Act, 28 U.S.C. § 1651(a), as another potential source of relief. *Reid* overlooked the fact that the petitioner there had also sought relief from the district director (766 F.2d at 114 n. 4), a denial clearly reviewable via habeas corpus. *Reid's* attempt to find a vehicle for judicial review of BIA's denial of a stay further supports this Court's conclusion: If such a denial could indeed be reviewed in a district court under Section 1105a(a)(9), the extended discussion in *Reid* was totally unnecessary.

More importantly in judicial-review terms, under Section 1105a(a)(9) Saleh could have sought review and an accompanying stay of deportation immediately upon a denial of stay by the district director (see, e.g., *In re Odeh*, 601 F.Supp. 25, 26–27 (N.D.Ill.1984)). INS regulations anticipate the judicial review of a district director's disposition of a request by requiring written notice of such dispositions, with a statement of specific reasons for any denial. No such requirement is imposed on immigration judges or BIA.

Aliens facing imminent deportation thus have three independent sources to stay such deportation. District directors initially decide such requests, and their decisions can be reviewed immediately in habeas proceedings. If the alien also files a motion to reopen, he or she can also request a stay from the immigration judge during the time that motion is pending. If the motion to reopen is denied, the alien can request a stay from BIA during the pendency of the appeal from that denial. True enough, under the analysis in this opinion any further appeal from the immigration judge's or BIA's denial of a stay must await judicial review until it can be coupled with the appeal to a court of appeals from BIA's denial of the motion to reopen. But that deferral does not vitiate the ample procedural protection provided by the alien's right to obtain immediate habeas review of the district director's denial of a stay of deportation. Because all three requests for a stay would presumably be based on the same grounds and would be subject to the same standard of review, only one need be reviewed judicially to shield an alien from an abuse of discretion.

## Conclusion

This Court lacks subject matter jurisdiction not only over the issues Saleh has raised in his Petition (a clear deficiency in the Petition) but also, under the analysis in this opinion, over any other issues Saleh could have raised.[22] Accordingly the Petition is dismissed for want of jurisdiction.

## APPENDIX

Although Respondents assume Saleh's Petition automatically stayed his deportation (R.Mem. at 3), they cite nothing for that proposition. Gordon & Rosenfield, referred to in the text at n. 3, does say that—but it cites only one district court case, *Chin Ming Mow v. Dulles*, 117 F.Supp. 108, 109 (S.D.N.Y.1953) in support.

*Chin Ming Mow*, however, involved an exclusion proceeding under an earlier version of the Act. Today Section 1105a(b), which controls judicial review of exclusion proceedings (see n. 4), does not provide for such an automatic stay (*Reid v. INS*, 766 F.2d 113, 116 n. 8 (3d Cir.1985)). Section 1105a(a), which controls this case involving deportation proceedings, does provide for an automatic stay when a "petition for review" is filed in a Court of Appeals (see Section 1105a(a)(3)), but it is silent as to habeas corpus proceedings (see Section 1105a(a)(9)). Some courts have in fact stayed deportation orders pending decision of habeas corpus petitions filed under Section 1105a(a)(9) (see, e.g., *Lopez-Alegria v. Ilchert*, 632 F.Supp. 932, 935 (N.D.Cal. 1986)), but they treat such relief as discretionary rather than automatic.

Respondent's assumption of automatic stay is also seriously undercut by *Foti v. INS*, 375 U.S. 217, 226 n. 12, 84 S.Ct. 306, 312 n. 12, 11 L.Ed.2d 281 (1963). *Foti* noted INS policy at that time was to stay deportation sua sponte whenever a nonfrivolous habeas petition is filed. Perhaps that is what Respondents are referring to in their memorandum, if INS follows the same policy today. In any case, the discussion in *Foti* would have been unnecessary if filing a habeas petition under Section 1105a(a)(9) automatically stayed deportation as a matter of law.

---

**22.** Because this Court has no jurisdiction to consider the Petition, it need not address another nonjurisdictional problem with his Petition: the nonexhaustion of administrative remedies represented by the failure to apply to the District Director for a stay (cf. *Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir.1987)).

In any event this discussion has been rendered moot by the current decision. This Court need not (and indeed cannot) consider issuing a discretionary stay, given its dismissal of the Petition for lack of jurisdiction.